# KANSAS CITY DISINFECTING & MANUFACTURING COMPANY, Appellant, v. BATES COUNTY..

### Division Two, February 16, 1918.

1. **APPEAL: Assignments: No Ground Stated.** A mere assignment in his brief that the trial court erred in refusing certain instructions offered by appellant, or a general assignment in his motion for a new trial that the court refused proper declarations of law offered by him, is not a sufficient assignment of error, even in a civil case.

2. ———: **Objections to Evidence: No Ruling.** If the testimony offered by respondent was admitted "subject to objection" by appellant, coupled with an opinion expressed by the court, sitting as a jury in a law case, that it was not admissible, and appellant made no further effort to obtain a definite ruling and none was made, it cannot be determined on appeal that the testimony was considered by the trial court in reaching his findings, and, hence, that the admission of the testimony, under the circumstances, was error.

3. **SHERIFF: Necessaries for Poor Farm.** The sheriff, without an order from the county court, has no authority to purchase articles necessary for the maintenance of the poor farm or poor house, so as to bind the county to pay for them.

4. ———: **Necessaries for Court House.** In the absence of any proper assignment, it will not be held on appeal that the trial court erred in holding that the statute making it the duty of the sheriff to furnish fuel, stationery and "other things necessary for the use of the court" did not authorize him to purchase large quantities of insecticide for disinfecting the court house, without an order of the county court.

Appeal from Bates Circuit Court.—*Hon. C. A. Calvird,* Judge.

AFFIRMED.

*W. O. Jackson* for appellant.

(1) The sheriff had power to bind the county. Harkreader v. Vernon County, 216 Mo. 696; Ewing v.

Vernon County, 216 Mo. 680; Motley v. Pike County, 233 Mo. 42; R. S. 1909, sec. 109, 1571 and 4065.    (2) It was error to admit evidence against the plaintiff to show that the sheriff had other disinfectants on hand, there being no evidence that the plaintiff knew anything about it.    (3)    It was error to admit evidence to show the prices of other goods recommended.    Besides, the evidence shows that this was the only goods that did the work.    (4)    The refusing of instructions one, two and three, offered by the plaintiff, was error.

*D. C. Chastain* for respondent.

Upon the evidence the verdict was right.    We do not dispute that upon some conditions the sheriff would have the right to purchase supplies, but his right to purchase and bind the county should be held within the strictest limits, since under the statute, Section 2778, the contract was invalid.    Those who deal with public officials must take knowledge of the limitations on their powers.    The plaintiff knew that this disinfectant was intended by the sheriff to go to the court house, where certainly a bug exterminator was not necessary, and to the poor farm places with which the sheriff had nothing to do.    Sec. 4081, R. S. 1909.

FARIS, J.—Plaintiff sued Bates County for the sum of one hundred and forty dollars, being the purchase price of seventy gallons of "Killbug Insecticide," bought in September, 1911, by a sheriff of that county for use in the jail, the poor house and the court house. On a trial before the circuit court, sitting as a jury, judgment was rendered in favor of plaintiff for the sum of twenty dollars only, and plaintiff appealed.

The facts are brief, but unique and illuminating. Whether the case originated in the county court and travelled thence to the circuit court by appeal, or whether it was begun originally in the circuit court, is dark and doubtful.    Be this as may be, the proceeding is bottomed upon an account for bug exterminator, which, date

and merely ornamental externals omitted, reads thus:

"Sold to Bates County, Missouri, 70 gallons Kill-bug Insecticide at $2, $140. Killbug Insecticide, guaranteed by the K. C. Disinfecting & Mfg. Co., under the Insecticide Act of 1910. Serial No. 175."

To this account is appended the O. K. of one W. J. Bullock, with the statement, to-wit: "I ordered and received the above bill of goods for Bates County, as Sheriff."

Upon the trial the president of plaintiff testified by deposition, and in order, possibly, to show the extent of the infection, he stated that plaintiff sold "this Killbug" to numerous counties in Missouri, Oklahoma and Kansas, and the witness "judged" that a seventy-gallon order was "a reasonable supply for a county like Bates County." The witness stated that being advised that "these goods" would be delivered for use to the jail, the poor farm, and the court house, he shipped the goods in ten-gallon cans, so that twenty gallons could be conveniently sent to the jail, twenty gallons to the poor farm, and "so much" (meaning the remainder probably) to the court house. Plaintiff took the order from one, the said Bullock, then sheriff of Bates County, through a certain C. W. Meyers, as agent, to which latter, as a commission for obtaining the order from Bullock, forty per cent of the amount of the order, or $56, was paid. Speaking of the valuable and lethal qualities of what the witness amiably but perhaps euphuistically denominated "these goods" he said:

"If there are any roaches shows up (sic) around the building it is used for them. If there are prisoners brought in, they spray their clothes and sometimes, as you know, it is necessary to spray their person with it too. It is an insecticide. We sell it for insecticide, but it is a standard disinfectant. You can use it in a room like this, or any other room, say where one has had smallpox, or something like that. It is not for toilets, it is too expensive for that. It is all right to be used for that, but we do not recommend it for toilets, it is

too expensive  .  .  .  The *name shows it will kill any bugs* or germs it comes in contact with, any insects." It also sufficiently appeared from this witness's testimony, that many demands had been made upon defendant for payment, but that payment had never been made.

Bullock, sheriff when the "Killbug Insecticide" was purchased (utterly reckless of the inherent prohibitive richness of this concoction as a deodorizer for sewers *et id omne genus*), testified that he bought it as a disinfectant, or deodorizer, to discourage an offensive odor which came from the jail sewer, which sewer passed through or near the basement kitchen of the jail, wherein the witness resided. He also said that during his term of office he might have bought as much as 320 gallons of disinfectant, and that there was already a barrel on hand when the witness took office, which latter, however, he had never used because he did not recognize it as disinfectant, but thought it was bridge paint. He was, he said, compelled to administer this insecticide to this sewer in portions of three or four gallons at a time.

Other testimony came into the case (over plaintiff's objection, but subject thereto), to the effect that when the case was tried (some two years after the sale here under discussion), there were yet on hand of divers disinfectants more than 320 gallons, a supply, some of the witnesses say, more than sufficient to last Bates County for ten years. Of this supply on hand more than 60 gallons thereof were made up of the remainder of the identical seventy gallons of Killbug Insecticide bought from plaintiff and now here in dispute. Testimony also came in over plaintiff's objection and which was likewise admitted subject thereto, that the usual and customary price of standard disinfectants was from seventy-five cents to one dollar per gallon. Other necessary facts, if such there be, will be set out in our discussion.

Plaintiff complains that the court erred in refusing instructions numbered one, two and three, which were offered by plaintiff, but learned counsel does not favor us with any reasons for the faith which we assume is

in him, nor does he furnish us with any au-
**Assignment Without Ground.** thorities for the position which he takes. He merely assigns the error and lets it go at that. Moreover, the only assignment of error in plaintiff's motion for a new trial which is at all apposite, is the general one that "the court refused proper declarations of law offered by the plaintiff." This is not sufficient as an assignment of error, even in a civil case. [Polski v. St. Louis, 264 Mo. 458; Wampler v. Railroa ., 190 S. W. 908; State v. Rowe and Sanders, 271 Mo. 88.]

It is also urged that it was error in the court *nisi* to admit evidence tending to show that at the time the "Killbug Insecticide" here in question was bought by the sheriff, he had on hand more than 250 gallons of other disinfectants and insecticides. Likewise that it **Evidence.** was error to admit evidence of the price at which other disinfectants were selling at the date of this purchase. Regardless of whether there be inherent error in admitting this evidence or not, it was all admitted by the court "subject to the objection" of plaintiff. In one case the trial court expressed the opinion that the evidence was not admissible, but admitted it subject to plaintiff's objection. Plaintiff made no further effort to obtain a definite ruling, nor was any such definite ruling at any time made upon plaintiff's objections by the trial court. In such case we cannot know whether the court considered this evidence or not. His language when he came to render judgment would indicate that he did not allow it to enter into the case as a deciding factor.

No other errors are called to our attention, although it is suggested, apposite to the whole case mayhap, but not in such wise as to call for review by us, that the **Power of Sheriff to Bind County.** sheriff had power to bind the county. It is probable that even this suggestion is too broad a statement of the controlling law. We took occasion to say in the case of Lamar Twp. v. Lamar, 261 Mo. l. c. 189, that:

"Officers are creatures of the law, whose duties are usually fully provided for by statute. In a way they are agents, but they are never general agents, in the sense that they are hampered by neither custom nor law and in the sense that they are absolutely free to follow their own volition. Persons dealing with them do so always with full knowledge of the limitations of their agency and of the laws which, prescribing their duties, hedge them about. They are trustees as to the public money which comes to their hands. The rules which govern this trust are the law pursuant to which the money is paid to them and the law by which they in turn pay it out. Manifestly, none of the reasons which operate to render recovery of money voluntarily paid under a mistake of law by a private person, applies to an officer. The law which fixes his duties is his power of attorney; if he neglect to follow it, his *cestui que trust* ought not to suffer. In fact, public policy requires that all officers be required to perform their duties within the strict limits of their legal authority."

It is not doubted that the statutes (Secs. 1571 and 1573, R. S. 1909) and the construction thereof by this court in a case to an extent analogous (Harkreader v. Vernon County, 216 Mo. 696) furnish authority to a sheriff of a county to purchase such articles and supplies as are requisite and necessary *to keep and maintain the county jail* "in good and sufficient condition and repair." But such authority, absent an order of the county court, which might *pro hac vice* make him its agent, would not extend to purchases made for the poor house or the poor farm, the custody and control of which are vested by statute in the county court, and not in the sheriff. [Sec. 1343, R. S. 1909.] Likewise, the county court is by statute vested with the control of the court house (Sec. 4081, R. S. 1909), and while it is made the duty of the sheriff "to furnish fuel, stationery and other things more necessary for the use of the court" (Sec. 3887, R. S. 1909), this duty is delimited by the appended provision directing performance thereof

"whenever ordered by the court." [Sec. 3887, supra.] This latter conditional duty is disassociated from control of the premises and it a general one which the sheriff owes to the circuit court, to the probate court, and even to the county court itself, though the latter court is the general statutory contracting, auditing and fiscal agency of the county. Clearly, such an order should either be express, or plainly implied from the necessities of the situation.

If so it be that "Killbug Insecticide" is connoted within the extremely general designation of "other things necessary," as contained in the statute last above mentioned (touching which we venture no opinion), we are able to appreciate the pertinency of the qualifying provision, that a sheriff in furnishing such other necessary things should act only whenever ordered by the court. For it would be to place too great a burden upon even a sheriff's omniscience to require him to know when "Killbug Insecticide" becomes an absolute necessity for the sanitation and comfort of any of these several courts. On the other hand it might well happen that the duty of providing seventy gallons of "Killbug Insecticide" for the immediate use of a court would become upon occasion so urgent and pressing as to furnish legal warrant for the sheriff's acting without a solemn order of the court to that end, and that such act might in law be excused upon the ground of necessity, or even, if we may borrow a term from the criminal law, upon the ground of self-defense.

But these important puzzling and conflicting questions are not confronting us. We merely suggest them as considerations of grave importance to all courts, whom sheriffs are required to serve, reserving our solemn adjudication till a concrete case shall arise wherein we shall meet these points face to face. Since no errors are urged in a manner meet for review, the case ought to be affirmed. Let this be done. All concur.