JESS ASLIN v. STODDARD COUNTY, Appellant.—106 S. W. (2d) 472.

Division Two, June 21, 1937.

*Henry M. Phillips* for appellant.

*Geo. Munger* for respondent.

COOLEY, C.—Respondent sued Stoddard County, in the circuit court of said county, to recover $500 wages or salary as janitor under contract with the county court of said county. The case was sent on change of venue to the Circuit Court of Cape Girardeau County, where it was tried to the court, without a jury, resulting in a judgment for respondent for the full amount, from which this appeal was duly taken.

The case was submitted to the court on an agreed statement of facts, reading as follows:

"For the purpose of obtaining a judicial determination of this cause without bringing the witnesses into court the parties plaintiff and defendant do hereby agree that the following facts are true and constitute all the facts to be considered by the Court in deciding this cause, each party hereto reserving the right to object to the relevancy and materiality and also the admissibility of any of such facts so stated.

"In the August primary, 1932, W. J. Garner and Frank B. Carney, who were then associate justices of the County Court of Stoddard County and who, with W. J. Wilson, Presiding Judge, composed said County Court, were candidates for re-election as associate judges and were defeated by H. D. Stroup and John P. LaRue respectively; that said Stroup and LaRue were elected associate justices at the general election that year and took office as such at the coming in of the new year, and thus the new court was composed of W. J. Wilson, H. D. Stroup and John P. LaRue, whereas the old court was composed of W. J. Wilson, W. J. Garner and Frank B. Carney.

"On the 31st day of December, 1932, the County Court of Stoddard County, as above set out as to personnel, entered into the written agreement attached to the petition filed by plaintiff in this case and made a full record thereof on its minutes and full record.

"On the first secular day in January, 1933, plaintiff, in keeping with his agreement as set out in said contract of December 31st, aforesaid, appeared before the County Court of Stoddard County, at the courthouse in said county and while said court was in session, and informed them that he was ready to begin the discharge of the duties as caretaker and janitor of the courthouse and office building then owned by said county and used and cared for by it; that he was then able and willing to discharge all of the duties aforesaid; that said court refused to permit him to perform said duties under said contract; that thereafter and up to the time he filed this suit plaintiff was so able and willing to perform all the duties and stood ready to do so and so notified said court from time to time during said period, and especially on the first day of each month up to the bringing of this suit and that plaintiff often demanded payment of the said salary under said contract but that defendant, by its county court aforesaid has at all times refused to permit plaintiff to discharge the duties under said contract and has also refused to pay him the salary or any part thereof. Plaintiff further states that during the ten months beginning the 1st of January, 1933, and ending the 31st day of October, 1933, he was unable to procure any service or employment of the character contracted for by said court as aforesaid and was unable to procure other gainful employment.

"Immediately prior to and up to the 1st day of January, 1933, for a period of two years Sank Parks had been janitor at the courthouse at a salary of sixty dollars per month; that on said December 31, 1933, the following appointments were made: Dr. W. J. Hux, county physician for a term from February 1, 1933, to February 1, 1934, as Deputy State Health Commissioner for the same period and as County Welfare Officer for the same period; Alex Mooney as Superintendent of the County Home for a term from January 1, 1933, to January 1, 1934; Sydney Wilson as County Land Commissioner and Agent for County School Fund Lands for a term from January 1, 1933, to January 1, 1934; all of the foregoing appointments were executed in the form written contracts and entered of record on the records of the County Court proceedings, and that Sank Parks, without any appointment or contract in writing or any court record whatever performed the duties of janitor and caretaker aforesaid and was paid therefor by said county court at sixty dollars per month until the 6th day of March, 1933, when the said court caused to be placed upon its records the following appointment:

"Sank Parks, janitor of the courthouse at a salary of sixty dollars per month to serve until appointment be revoked by the Court; Dr. John Wilson, county physician, Deputy State Health Officer and County Welfare Officer; Alex Mooney, Superintendent of County Home; Geo. M. Barham, County Land Commissioner and Land Agent; all of which appointments were for an indefinite term and subject to be revoked by the Court at any time.

"At the time said new appointments were made by the new Court as last aforesaid no record or any revocation of former appointments as aforesaid was ordered or made. And no revocation since.

"The written instrument attached to plaintiff's petition in this cause and designated by plaintiff as a contract is the written agreement executed by the old court on December 31, 1933, as aforesaid, and was entered into between the said old court and plaintiff as janitor of said courthouse aforesaid."

The contract with plaintiff referred to in the agreed statement of facts, reads:

### "CONTRACT

"KNOW ALL MEN BY THESE PRESENTS, that this agreement and contract is entered into by and between Jess Aslin as party of the first part, and the County Court of Stoddard County, Missouri, acting on behalf of and for Stoddard County, Missouri, as party of the second part.

"WHEREAS, the County Court of Stoddard County, Missouri, on the 12th day of December, 1932, by its order of record made on said date, did select and employ Jess Aslin as janitor for the courthouse of Stoddard County, Missouri, and the county property known

as the Stoddard County Trust Company building for the year 1933, at the monthly salary of $50.00 per month payable in County warrants, and

"WHEREAS, the said Jess Aslin has accepted said appointment and agreed to perform the duties of said office and employment as janitor in an efficient and workmanlike manner; NOW THERE-FORE, in consideration of the aforesaid agreement of the said Jess Aslin to perform the said duties of the said office and employment in said manner, the County Court of Stoddard County, Missouri, acting on behalf of and for Stoddard County, Missouri, does hereby employ and agree to pay to the said Jess Aslin the sum of $50.00 per month in County Warrants for the year 1933.

"Party of the first part hereby expressly does accept said appointment and employment and does hereby expressly agree to perform the duties of janitor for the aforesaid properties in an efficient and workmanlike manner.

"This contract made and entered into this 31st day of December, 1932.

"Stoddard County, Missouri,
"By W. J. Wilson,
"Presiding Judge of County Court.
"Jess Aslin."

Appellant presents substantially two contentions, viz., that the "Old County Court" was without legal authority to make a contract "extending beyond the term of office of the members" thereof; and that the "appointment" of plaintiff was not made for a reasonable time and "in good faith, without fraud and collusion." Of these in their order.

I. By statute, Sections 2072 and 2073, Revised Statutes 1929, (Mo. Stat. Ann., pp. 2656, 2657), the county court is composed of three members, styled judges, one of whom, by statute, the presiding judge, is elected by the county at large for a term of four years, the other two being elected, by districts, for a term of two years, the terms of all continuing until their successors are elected and qualified. In the instant case the terms of the two "district" judges expired December 31, 1932, if their successors, elected at the November, 1932, election qualified promptly. The presiding judge held over. The county court is a court of record, having certain judicial functions. It also has many administrative duties in connection with the care and management of county property and funds, school funds, highways, etc., and the business affairs of the county generally. When new or different district judges are elected and qualify no "reorganization" of the court is required. The presiding judge continues to be such. If he is replaced by another his successor becomes, by operation of law, presiding judge. In view of the constitutional and statutory provisions creating county courts and prescribing their

functions and duties it is clear that the county court is a continuing body, not a succession of different boards or "courts."

By Section 2078, Revised Statutes 1929 (Mo. Stat. Ann., p. 2658), it is provided that the county court "shall have control and management of the property, real and personal, belonging to the county." This express authority and duty carries with it the necessarily implied authority to employ such labor and service as may reasonably be requisite in order to effectuate the express power granted. Of such character is the work of a janitor, such as plaintiff herein. By the order of court and the contract pursuant thereto employing him he did not become an officer of the county, but only an employee, to whom no attempt was made to delegate governmental or other such functions of the court which from time to time might involve matters of discretion to be exercised by that body. [See, on this question, Manley v. Scott, 108 Minn. 142, 121 N. W. 628, 29 L. R. A. (N. S.) 652, and notes in latter volume.]

No case from this State is cited nor have we found any directly adjudicating the precise question now under consideration, viz., whether the county court may lawfully make a contract, binding upon the county (assuming good faith in the making thereof and reasonableness as to time of performance), the performance of which will extend beyond the terms of office of part or all of the members of the court as then constituted. Appellant cites, on this point, 15 C. J., p. 541, par. 234, and Tate v. School District, 324 Mo. 477, 23 S. W. (2d) 1013. The Tate case is cited chiefly on the proposition that the contract must be for a reasonable time and free from bad faith or collusion, etc. (a point to be discussed in our next paragraph). Respondent also cites the Tate case.

In said Tate case the plaintiff, a qualified school teacher, was employed by the school board, composed of three members, by contract dated December 18, 1924, to teach for a term of eight months, beginning August 3, 1925. There was to be, by law, an annual school meeting in April, 1925, at which time the term of one of the directors, Cottrill, president of the board, would and did expire, he being succeeded by another. (Incidentally, we may state, it appears that Cottrill's vote was necessary to the employment of the plaintiff). After the April, 1925, school meeting the "new board," composed of two of the former members and Cottrill's successor, after reorganizing as provided by statute, refused to recognize the contract with the plaintiff. She sued and recovered, the judgment being affirmed here. A number of questions are discussed in the opinion. Pertinent to the question now under consideration the court said, 324 Mo. l. c. 492, 23 S. W. (2d) l. c. 1020, (2):

"The foregoing statutes reflect the clear and unmistakable intention of the General Assembly, . . . that the government and control of each of the common-school districts in the State shall be vested

in a board of directors composed of three members, whose terms of office shall not expire concurrently, but that the term of office of only one of the three members composing said board shall expire during each school year, thereby reflecting the intention of the General Assembly that such governing board of directors of a common-school district shall be a continuous body, or entity, of which a majority of the members composing the board shall continue in office during the next succeeding school year. While provision is made in the statutes for a change in the personnel of the membership of the board of directors by the vote of the qualified electors of the school district at each annual meeting of the school district, yet the intention of the Legislature is clearly reflected in the statutes that the board of directors of a common school district is a continuous body or entity, and that transactions had, and contracts made, with the board are the transactions and contracts of the board, as a continuous legal entity, and not of its individual members.''

In said Tate case a number of authorities are reviewed, in which it is held that contracts of the nature of that there in question are binding upon the school district, though the term of office of some members of the board making them have expired, if the contracts were for a reasonable time and not otherwise repugnant to public policy. The opinion says that such is the prevailing rule, citing and quoting from 35 Cyc. 1079, 1080, and 24 Ruling Case Laws 579, and citing numerous decisions following that rule. The court held that the contract was not void for want of power or authority in the then board of directors to make it on December 18, 1924.

The text of Corpus Juris cited by appellant reads:

''Although it has been held in some cases that the contract of a county board may be valid and binding, even though performance of some part may be impossible until after the expiration of the term of the majority of the board as it then existed, yet the general rule is that contracts extending beyond the term of the existing board and the employment of agents or servants of the county for such a period, thus tying the hands of the succeeding board and depriving the latter of their proper powers, are void as contrary to public policy, at least in the absence of a showing of necessity of good faith and public interest.''

We have examined the cases cited in the footnotes in support of said text. In our opinion most of them are distinguishable, either in their facts or because of statutory provisions, from the case before us.

In Manley v. Scott, supra, the Minnesota Supreme Court had before it a question similar to that we are now considering. On December 31, 1908, the board of county commissioners appointed and by written contract employed one Shaffer as morgue keeper for the year 1909. The terms of two of the five members of the board expired at

midnight that night, two new commissioners having been elected at the preceding November election. When the two new commissioners took office, soon after January 1, 1909, the board elected a new chairman and vice chairman, as required by statute, and attempted to rescind the contract with Shaffer and make a new contract with one Manley as morgue keeper for the year 1909. The court held that the board of county commissioners had power to make the contract with Shaffer when it was made and, "Having the power at that time to employ a morgue keeper, there is no implied limitation upon that power which restricts the possible term of employment to the time when any member or members of the board shall go out of office;" and that, the contract with Shaffer being fair and reasonable and there being no question of fraud or collusion, said contract was binding and the board, after the qualification of the new members had no power to rescind it without cause being shown. Speaking of the question of power of the board of county commissioners to "make a contract with an employee which extends beyond the expiration of the terms of office of certain members of the board," the court said, 29 L. R. A. (N. S.) l. c. 655: "While there is some apparent conflict in the authorities, it is reasonably clear that the weight of authority is to the effect that the board has such power," citing numerous cases. The court further said (29 L. R. A. (N. S.) l. c. 659), quoting approvingly from Pulaski County v. Shields, 130 Ind. 6, 29 N. E. 385:

"It (the board) is a continuous body. While the personnel of its membership changes, the corporation continues unchanged. It has power to contract. Its contracts are the contracts of the board, and not of its members. An essential characteristic of a valid contract is that it is mutually binding upon the parties to it. A contract by a board of commissioners, the duration of which extends beyond the term of service of its then members, is not, therefore, invalid for that reason."

In said case of Manley v. Scott the court mentioned, as apparently announcing a "somewhat different conclusion" from that which it said was supported by the weight of authority, practically all of the cases cited in the footnotes in 15 Corpus Juris, supra, and proceeded to discuss and distinguish those cases. [See, also, notes to Manley v. Scott, 29 L. R. A. (N. S.) 652.]

We regard said case of Manley v. Scott as in point and as being soundly reasoned. The county court, as we have said, is a continuous body. It represents and acts for the county. In making contracts it may be said to be the county. Many contracts, proper enough and reasonable as to the time of performance, can be conceived which, of necessity, could not be fully performed during the incumbency of all of the judges in office at the time such contracts were made. To hold such contracts invalid and the court powerless to make them simply because some members of the court ceased to be members thereof

before expiration of the period for which the contract was made might, and in many instances doubtless would, put the county at disadvantage and loss in making contracts essential to the safe, prudent and economical management of its affairs. To illustrate:

In Walker v. Linn County, 72 Mo. 650, the county court, through an appointed agent, insured county property for a period of five years. Point was made, on demurrer, that the court had no power to make the contract. This court held that the county court, under its statutory authority to "have the control and management" of the county's property and its statutory duty to "take such measures as shall be necessary to preserve all buildings and property of their county from waste and damage" had the implied authority to insure the buildings belonging to the county. The contract was held valid. The question of the time of performance as extending beyond the terms of office of the then members of the court was not raised and was not discussed in the opinion, and that case therefore can hardly be considered authority one way or the other on the point we now have under consideration. But, if thought of at all, the time factor must have been regarded by the court as not affecting the validity of the contract. And whether considered or not in that case can it be doubted that the county court, empowered to insure the county property, could lawfully make a contract for insurance extending beyond the terms of office of its then members, if such contract was made in good faith and was (perhaps because of a lower annual premium than for a short period) advantageous to the county? We think not. Other illustrations might be given. In our opinion a county court has power to make a contract such as that here in question, for a reasonable time, the performance of which will extend beyond the term of office of some member or members of the court. We so hold.

II. We take next the contention that the contract was for an unreasonable time and was made in bad faith and collusively. As to the time factor we think it clear that one year cannot be considered an unreasonable term of employment, the circumstances considered. The county court needed the services of a competent janitor (a continuing need), and, being agent of the county and trustee of its funds (Kansas City Disinfecting & Mfg. Co. v. Bates County, 273 Mo. 300, 201 S. W. 92), owed the county the duty to conserve its funds and to procure necessary labor and service at the best available price. It may well be that, in the judgment of the court, a competent janitor, who might, perhaps, have found employment elsewhere, could be hired at the time in question for the definite term of one year, to the advantage of the county. The result in the instant case emphasizes that thought. There is no contention that plaintiff was not competent and suitable for the work for which he was employed. Prior to his employment Parks had been receiving $60 per

month for doing the same work which plaintiff contracted and was willing to do for one year at $50 per month. The "new" county court (so called in appellant's brief) continued to pay Parks $60 per month. The contract with plaintiff, if carried out, would have saved the county $10 a month for a year—a substantial saving on an item of the size involved.

Neither do we think the agreed facts would justify us in holding, as matter of law, that the court acted fraudulently or in bad faith in employing plaintiff. Fraud is not presumed. Contra, right rather than wrong action is presumed, if presumption may be indulged. So far as concerns the employment of plaintiff alone that contract certainly cannot be said to indicate bad faith or wrongful purpose on the part of the court. As we have pointed out it was calculated to conserve the county's funds—to save money for the county, and would have so resulted had it been adhered to. But it is said that, at the same time, when two members of the court were about to bid farewell to their official positions, the court made three other "appointments," each for a term of one year, when the statute did not fix any definite term for such appointments or employments. One of those "appointments," that of Mooney, seems to have been considered by the so-called "new court" as all right, since he was retained (though for an indefinite term). As to none of them is there any showing concerning salaries, or the reasons why the county court made the alleged "appointments" on December 31, 1932. We have but the bare fact that the appointments were made. From this it is argued that said appointments were made collusively and in bad faith, for the purpose of forestalling the court, after the two newly elected members took office, from appointing other persons to such positions, and that, inferentially, it must follow that plaintiff's employment was actuated by the same purpose. We cannot say, as matter of law, that it conclusively so appears. The trial court found the issues for the plaintiff. We would not be justified in setting aside that finding. The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.