**ST. LOUIS POLICE OFFICERS'
ASSOCIATION, et al., Plaintiffs–
Respondents,**

v.

**BOARD OF POLICE COMMIS-
SIONERS, et al., Defen-
dants–Appellants.**

No. 61814.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 22, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Jan. 28, 1993.

Greenberg & Pleban, C. John Pleban, Lynette Petruska, Judith A. Ronzio, St. Louis, for defendants-appellants.

Feldacker & Cohen, P.C., Bruce C. Cohen, St. Louis, for plaintiffs-respondents.

PUDLOWSKI, Judge.

This case arises out of a dispute between the Board of Police Commissioners of the City of St. Louis (Board) and the St. Louis Police Officers' Association (Police) over the meaning and amount of "salary continuation" benefits to be paid to commissioned officers and non-supervisory civilian employees in the event of total temporary disability resulting from accidents suffered in the course of their employment.[1] Board appeals a summary judgment by the Circuit Court of the City of St. Louis finding Board legally obligated, by statute and a 1988 consent decree, to pay 100 percent salary to police officers and civilian non-supervisory personnel suffering from total temporary disability. We affirm.

## I. *History of Dispute*

A brief synopses of the events leading to the dispute is necessary to place the case in perspective. Prior to September 15, 1986, police officers, turnkeys and non-supervisory civilian personnel of the St. Louis Metropolitan Police Department received full pay during periods of temporary total disability for injuries or illnesses sustained in the course of their employment. On September 15, 1986, Board issued a Special Order which provided that employees who were not injured in "the line of duty" would be paid pursuant to section 287.170, RSMo Cum Supp.1991 (section 287.170), of the Workers' Compensation Law. Section 287.-170 sets the amount to be paid to workers for total temporary disability sustained in the course of employment at two-thirds of an individual's salary or an amount not to exceed one hundred five percent of the state's average weekly wage. Police were unwilling to accept this reduction in benefits and brought suit against Board.

On June 9, 1988, the parties entered into a consent decree which provided, in part:

On or before the effective date of this settlement agreement, Defendant Board of Police Commissioners shall abolish the distinction between "work-related" and "line-of duty," as set forth in Special Ortder [sic] 86–S–41. The Board shall immediately begin paying and shall

---

1. Initially, Police moved to strike Board's brief for failure to comply with Rule 84.04. We deny the motion.

henceforth pay all commissioned officers in the ranks of patrolman through sergeant, turnkeys, and non-supervisory civilian employees of the St. Louis Metropolitan Police Department their full pay due to absences caused by accidents or occupational diseases arising out of and in the scope of their employment.

The consent decree stipulated that nothing contained in it was to be deemed an admission by Board of the allegations in the petition filed by Police. Until the 1991/92 fiscal year, Board continued to pay full salary for all injuries sustained in the course of employment by police officers and civilian personnel.

On May 10, 1991, Board issued a letter to all commissioned officers and civilian employees. The letter cited a budgetary crises experienced by the City of St. Louis as an explanation for various restrictions which would affect Police in the 1991/92 fiscal year. One particular budgetary cut provided:

> Fourth, [Board] will reduce compensation to employees injured on the job to two-thirds instead of the 100 percent we now pay. Two-thirds payment for workers' compensation cases is standard practice in many businesses and other agencies. This should not result in a reduction of the actual take home salary for injured employees.[2]

Police contested the reduction in benefits and the present litigation ensued. The case was submitted to the trial court on a summary judgment motion. The court granted summary judgment in a series of three orders. On January 31, 1992, the court issued an order holding the 1988 consent decree binding on the current Board. The trial judge suggested that if Board wished to contest the 1988 consent judgment, the proper procedure was not collateral attack in a separate litigation but rather to re-open the consent decree pursuant to Rule 74.06(b). The trial court also rejected Board's construction of section 84.160.9(2), RSMo Cum.Supp. 1991 (section 84.160.9(2)), in holding that the statute mandated payment of full salary for job related injury and illness. On February 14, 1992, the trial court issued a second order, purportedly, to clarify the issues addressed in the January 31 order. The second order, among other things, provided "that the Board of Police Commissioners is required by section 84.160.9(2) to 'provide or contract for insurance coverage providing salary continuation coverage for officers and employees of the police department.' ... This is a non-discretionary, statutory requirement and until such time as the statute is changed by the Legislature Board is bound to provide such coverage." The court determined that the plain meaning of "salary continuation" was the continued payment of a person's whole salary in the event of total temporary disability resulting from on the job injury or illness. The court further stated that the parties were barred from re-litigating the issue because it had already been decided by the 1988 consent decree. On March 19, 1992, the court further amended its order requiring Board to pay pre-judgment and post-judgment interest on amounts owed to injured police officers.

During the period between the 1988 consent decree and the instant case, Board steadfastly maintained that section 84.160.9(2) was not a statute authorizing compensation for total temporary disability resulting from on the job injury. Rather, Board interpreted the words "salary continuation" contained in the statute as applying to compensation for injuries sustained outside of the course of employment. Board understands "salary continuation" benefits as the amount of compensation paid to injured police officers and employees who, having been injured other than on the job, have exhausted their sick leave-a type of extended sick leave compensation. This amount is currently equal to twenty dollars per day.

---

**2.** Because of favorable IRS rulings, the final statement is incorrect. An employee of the police department was drawing 100 percent salary tax free prior to the proposed reduction which resulted in an actual windfall to injured employees. Police argue this benefit keeps moral high, and Board counters that such a result discourages employees from returning to work because of the resulting loss in real income.

Conversely, Police have maintained that "salary continuation" means compensation paid to workers who sustain injuries on the job and suffer total temporary disability. Police state that section 84.160.9(2) is in the nature of a workers' compensation statute mandating payment of 100 percent salary in the event of total temporary disability.

Board appeals the judgment of the trial court and presents five points of error. Board alleges: (1) the doctrine of sovereign immunity prevents the enforcement of the 1988 consent judgment because Board was powerless to enter into it; (2) the Missouri Constitution prohibits it from paying full salary for work related disabilities; (3) the current Board of Police Commissioners is not bound by the actions of the previous Board because the membership on the Board has changed; (4) general rules of statutory construction prevent the interpretation that section 84.160.9(2) mandates payment of full salary in the event of total temporary disability; and (5) section 84.-160.9(2) does not pertain to work related disability. In support of its fifth point, Board argues that "salary continuation" means a payment provided by the department to employees who, having been injured or taken ill outside of the work environment, have exhausted their sick leave allowances.

## II. *Sovereign Immunity*

■ Board's first point of error essentially contests its own authority to set workers' compensation in excess of the amount provided for in the Workers' Compensation Law. If the 1988 consent decree is interpreted as an agreement by Board to pay 100 percent for total temporary disability, Board argues that the doctrine of sovereign immunity prevents it from being bound by the 1988 consent judgment because it was acting beyond the powers granted it by the General Assembly. In support of this claim, Board suggests even if the 1988 consent decree is interpreted to bind Board in perpetuity to pay full salary for total temporary disability, the decree is void because only the legislature and not Board can set the amount of workers' compensation paid. Board recognizes that chapter 287 of the Missouri Revised Stat-

utes constitutes an express waiver by the legislature of sovereign immunity but argues that section 287.170.1(4) waives the sovereign immunity of the state only to the two-thirds amount specifically authorized by statute. For reasons set forth in this section, we disagree.

Section 287.170.1(4) authorizes a payment of two-thirds salary for total temporary disability sustained in the course of employment. Board contends that this is an express waiver by the legislature of the states' sovereign immunity but that immunity is only waived up to the two-thirds salary amount. Therefore, Board argues, sovereign immunity dictates that Board was without authority in 1988 to enter into a consent judgment mandating that they pay 100 percent salary for total temporary disability.

■ "The Board of Police Commissioners of the City of St. Louis is an administrative agency created by statute and endowed with the power to appoint, discipline and control members of the Metropolitan Police Force." *King v. Priest,* 357 Mo. 68, 206 S.W.2d 547, 552 (1947). Board is a state agency funded by the City of St. Louis and currently governed by chapter 84 of the Missouri Revised Statutes. *See State ex rel. Sayad v. Zych,* 642 S.W.2d 907, 909–11 (Mo.banc 1982). As a state agency, Board is immune from suit by the doctrine of sovereign immunity except to the extent that the doctrine has been waived by the General Assembly. *See* § 537.600.1. Sovereign immunity has been waived by the state to the extent of the Workers' Compensation Law, but is limited to the obligations outlined in the Workers' Compensation chapter. *See* § 105.850.

As a state agency bound by Workers' Compensation Law, Board argues that it is unable to bind itself to pay more than the two-thirds of full salary (or an alternative statutory maximum not to exceed one hundred five percent of the state average weekly wage) stipulated in the Workers' Compensation Law because of limits placed on it by the doctrine of sovereign immunity which could only be waived by the General Assembly. We disagree and hold that the

Board of Police Commissioners had the authority to set the amount of total temporary disability payment at full salary because both the Workers' Compensation Law and chapter 84 covering the Police Departments of St. Louis and Kansas City grant the authority.

■ Section 287.170.1(4), covering total temporary disability workers' compensation coverage, provides:

[T]he weekly compensation shall be an amount equal to sixty-six and two-thirds percent of the injured employees average weekly earnings as of the date of injury; provided that the weekly compensation paid under this subdivision shall not exceed an amount equal to one hundred and five percent of the state average weekly wage

. . . .

§ 287.170(4). This statute applies to private employers and state agencies and dictates the exact amount to be paid to a worker experiencing total temporary disability. However, section 287.100, RSMo 1986 (section 287.100), provides, in part:

Nor shall anything in this chapter be construed as interfering with the right of any public employee to draw full wages, and retain his full fees, so long as he holds his office, appointment or employment. . . .

Board argues that because section 287.100, which was enacted in 1939 and never amended, was passed when public employers were not automatically subject to Workers' Compensation Law, it is no longer applicable in that workers' compensation is now mandated for state employees. In support of its position, Board argues that the statute would mandate payment of full wages to all state employees suffering from total temporary disability. Boards' argument fails to address its own point in that in the context of sovereign immunity the issue is not whether public employers are required to pay full wages during total temporary disability, but rather, whether a public employer like Board has the authority to pay full wages. The question of whether a police officer or civilian employee of the police department has the right to collect full salary for total temporary disability will be discussed below in the context of the consent judgment.

The Missouri Supreme Court considered a similar issue in the case of *Morrow v. City of Kansas City*, 788 S.W.2d 278 (Mo. banc 1990). Factually, *Morrow* involved a firefighter who was injured in the line of duty and who, during the period of total disability, was paid full wages by the city. Later Morrow recovered an award for partial permanent disability and the city wished to credit amounts paid in excess of the statutory workers' compensation amount for total temporary disability-i.e. the excess one third of Morrow's salary paid during his total temporary disability. At issue in *Morrow* was the effect of a clause in section 287.100 which allowed a public employer to claim wages paid as credit against a workers' compensation award for partial temporary disability. The court found that section 287.160.3, RSMo Cum.Supp. 1991 (section 287.160.3) which disallowed such credits, to be in direct conflict with a clause in section 287.-100. The court held that because section 287.160.3 was a later expression of the legislature, it was controlling and credits were disallowed. *Id.* at 281.

*Morrow* is instructive in two ways. First, while we recognize that the issue of the Kansas City Fire Department voluntarily paying Morrow his full wages during his total temporary disability was not decided in the case, we do note that this was the procedure followed by the Fire Department. Second, *Morrow* indicates that it is necessary to ask whether the clause at issue in section 287.100 is repugnant to the later statute section 287.170.1(4). We find that the statutes are not repugnant, but can be read in conjunction with one another. The two statutes read together indicate that in the context of public employment an employer may pay, but is not required to pay, full salary for total temporary disability. This result is borne out by the fact that appellants in this case have traditionally paid full salary to policemen who have been injured in the line of duty to boost morale.

■ We hold that under the Workers' Compensation Law as it currently exists, public employers may pay amounts in excess of the two-thirds rule in section 287.-170.1(4). We next turn to the specific effect of chapter 84 with regard to total temporary disability benefits.

Chapter 84 of the Missouri Revised Statutes covers the operations of the St. Louis Police Department. Section 84.170.2, RSMo Cum.Supp. 1991 (section 84.170.2) provides, in part:

> The boards of police are hereby authorized to make all such rules and regulations, not inconsistent with sections 84.-010 to 84.340, or other laws of the state, as they may judge necessary, for the appointment, employment, uniforming, discipline, trial and government of the police.

This section represents a broad grant of authority to Board to run the affairs of the police department. The statute implies that anything not specifically provided for by the General Assembly regarding the employment of police officers can be decided by Board in its discretion.

■ Section 84.160 in its various subdivisions sets the salaries and various benefits provided to police officers. Subdivisions 84.160.1 and 84.160.2 set forth a matrix of maximum salaries to be paid to police officers based on rank and years of experience in the department. The maximum salaries are specifically set by the General Assembly although the officers can and do receive lower pay at the discretion of the Board. Subdivision 84.160.9, which is the heart of the current controversy provides, in part:

> 9. The board of police commissioners:
> (1) Shall provide or contract for life insurance coverage and for insurance benefits providing health, medical and disability coverage for officers and employees of the department;
> (2) Shall provide or contract for insurance coverage providing **salary continuation coverage** for officers and employees of the police department;
> (3) Shall provide health, medical, and life insurance coverage for retired officers

and employees of the police department.... (emphasis added).

Before 1979, the statute was worded in a permissive manner, but as part of an emergency measure passed by the General Assembly in 1979, the language in the three clauses was changed from "may" to "shall." The two issues that the statute presents are: (1) the meaning of salary continuation coverage; and (2) whether salary continuation coverage mandates the payment of full salary.

The phrase "salary continuation coverage" is ambiguous. Logically, the phrase implies that the salary of employees of the police department will continue contingent on the happening of some event. Police argue that this event is total temporary disability sustained as a result of on the job injury, and Board argues that the contingent event is the exhaustion of sick leave after an injury or illness sustained outside of the scope of employment.

We believe that the former interpretation is the more likely. Board's interpretation of salary continuation benefits entails the payment of twenty dollars per day after the exhaustion of sick leave days. This benefit does not continue the 'salary' of an employee, but instead provides only a small fractional benefit to the employee who has exhausted his sick leave. In *St. Louis Firefighters Ass'n, Local 73 v. City of St. Louis,* 637 S.W.2d 128, 130–31 (Mo.App. 1982), the word salary was defined as:

> a specific form of compensation. Salary is a periodic allowance made as compensation to a person for his official or professional services or his regular work.... "Salary" is always compensation but "compensation" may be something other than salary.... Salaries for the St. Louis Police force are set by the General Assembly of the State of Missouri and are found in § 84.160 of the Revised Statutes of Missouri. (footnote and citations omitted).

We believe, based on the definition of the term, that salary is some amount bearing a relationship, either in full or some fractional amount, to the police employees wages rather than a fixed amount of twenty dol-

lars to be paid after sick leave is exhausted. The 'salary' of a police department employee continues in the event of total temporary disability sustained in the scope of employment, and ceases to 'continue' when sick leave days are exhausted.

The statute indicates that salary continuation benefits must be supplied by the Board of Police Commissioners. Board argues that because it is impossible to contract with an insurance company for workers' compensation coverage providing full salary coverage, salary continuation cannot mean anything more than the two-thirds required by the Workers' Compensation Law. The argument disregards the words "provide or contract" in the statute indicating that Board can supply full salary benefits for total temporary disability with internal funds.

Section 84.160.9 generally provides benefits for police officers and employees of the police department. Subsection (1) applies to general benefits such as "health, medical, and disability coverage" along with life insurance coverage. Subsection (3) provides the same benefits for officers and employees who have retired from the department. The twenty dollars per day that the police department pays to employees who have exhausted their sick leave seems more likely authorized by subsection (1) which offers a general health and disability plan. Thus, if subsection (2) is to have any meaning at all it must refer to workers' compensation.

■ The final issue revolving around the statute is what amount, if any, it authorizes for compensation for total temporary disability. The trial court interpreted "salary continuation" as full salary. The court justified this result on the basis of the plain meaning of the words "salary continuation." We disagree. While the only plausible meaning given to salary continuation coverage is total temporary disability coverage, the amount of this coverage is unclear. As discussed above, insurance policies provide for, and employers generally pay, two-thirds salary during periods of total temporary disability, but the police department has voluntarily paid full salary, and the Workers' Compensation Law does not limit the right of a public employee to draw full salary. Chapter 84 is silent as to the amount of disability to be paid. In light of the silence of the statutes and the broad discretionary powers granted Board in section 84.170(2), we conclude that Board has the authority and discretion to pay full salary in the event of total temporary disability but that it is not required to do so.

In summary, the General Assembly has placed the authority in the hands of the Board of Police Commissioners to voluntarily pay more than the amount provided in Workers' Compensation Law, and therefore the doctrine of sovereign immunity does not limit Boards' authority to set an amount.

### III. Constitutional Compatibility

■ Board next argues that providing full salary continuation coverage to employees of the St. Louis Police Department violates Article VI, sections 23 and 25 of the Missouri Constitution. Section 23 forbids political subdivisions of the state to grant public money to any individual. Section 25 modifies section 23 in that it allows pension and retirement benefits to be paid to public employees, their widows and children. The discussion of the last point illustrates that the General Assembly has specifically allowed workers' compensation, and both chapter 84 and 287 permit employees of the police department to draw full salary, if the Board so decides, in the event of total temporary disability. Appellants' second point is, therefore, without merit.

### IV. Effect of Consent Decree

Having decided that Board has the authority to determine the amount of Workers' Compensation paid for total temporary disability, we next turn our attention to issues surrounding the 1988 consent decree. The decree was entered into as settlement of a lawsuit involving compensation for injuries sustained in the course of employment. The decree provides that "[t]he Board shall immediately begin paying and shall henceforth pay all commissioned officers in the ranks of patrolman through sergeant, turnkeys, and non-supervisory civilian employees of the St. Louis

Metropolitan Police Department their full pay during absences caused by accidents or occupational diseases arising out of and in the scope of their employment." The 1988 consent decree failed to mention section 84.160.9(2) as authority for Board to enter into such an agreement, however, as the discussion above indicates, the statute is the source of the authority. Board attacks both the continuing viability and the interpretation given the consent decree by the trial judge in the instant cause.

### a. *Ability to bind successor boards*

■ Board claims that even if the 1988 consent decree validly bound the 1988 Board of Police Commissioners, it can no longer bind the Board in 1992 because the membership comprising the Board has changed. As discussed above, the Metropolitan Police Department is a state agency funded by the City of St. Louis. The Board of Police Commissioners is a five member panel with four members appointed by the governor and the mayor of St. Louis sitting *ex-officio*. The membership on the Board has changed almost completely since 1988 except for Mayor Vincent C. Schoemehl, Jr. who has occupied a seat on the Board throughout this period. Thus, Board argues that the prior Board could not bind the present Board through a consent judgment as a matter of law. The question to be addressed is whether members of the Board of Police Commissioners could bind their successors in office through a consent judgment with purported perpetual effect.

In *Firefighters v. Cleveland*, 478 U.S. 501, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986), the Supreme Court discussed the nature of consent judgments.

> Consent decrees are entered by parties to a case after careful negotiation has produced an agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each giving up something they might have won had they proceeded with the litigation. Thus, the *decree* itself cannot be said to have a purpose; rather, the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as respective parties have the bargaining power and skill to achieve. (Emphasis in the original).

*Id.* at 522, 106 S.Ct. at 3075. Thus, consent decrees are contractual in nature.

■ The authority vested in Board to set the level of total temporary disability benefits at full salary has been established above. Whether a contract entered into by the 1988 Board can bind future Boards is the question examined presently.[3] In *Aslin v. Stoddard County*, 341 Mo. 138, 106 S.W.2d 472 (1937), the Missouri Supreme Court examined the question of whether a county court whose judges sat for limited terms could enter into an employment contract with a janitor extending beyond the judge's terms. The court examined cases from other jurisdictions which dealt with county boards of commissioners and quoted the following passage from an Indiana case:

> It [the board] is a continuous body. While the personnel of its membership changes, the corporation continues unchanged. It has the power to contract. Its contracts are the contracts of the board, and not of its members. An essential characteristic of a valid contract is that it is mutually binding upon the parties to it. A contract by the board of police commissioners, the duration of which extends beyond the term of service of its then members, is not, therefore,

---

**3.** Board also argues that the 1988 Board of Police Commissioners did not have the authority to enter into the consent decree because the Board could not impair the legislative function of future Boards. The Board's argument is based on the distinction between governmental and proprietary functions of municipalities. Board's argument lacks merit because the police department is a state agency and the governmental/proprietary distinction does not apply to political subdivisions which are not municipalities or multi-state compact agencies which perform proprietary functions. *See Johnson v. Bi–State Development Agency*, 793 S.W.2d 864, 866 (Mo.banc 1990).

invalid for that reason. (Citations omitted).

*Id.* 106 S.W.2d at 476. The Board of Police Commissioners is a continuous body with a broad grant of powers to run the affairs of the police department. *See State ex rel. McNeal v. Roach,* 520 S.W.2d 69, 74 (Mo. banc 1975). The Board is clearly authorized to make contracts extending past the term limits of its members. These powers include the ability to enter into the contractual arrangements whereby police officers and civilian employees receive full salary for total temporary disability.

b. *Meaning of the Consent Judgment*

 Board next argues that the construction of the 1988 consent judgment as requiring it to pay full salary for total temporary disability is erroneous. Board claims that the consent judgment merely means that it agreed to return to the status quo of paying full salary and that it would not be prospectively bound by the judgment. The disputed portion of the judgment provides "[t]he Board shall immediately begin paying and shall henceforth pay all commissioned officers in the ranks of patrolman through sergeant, turnkeys, and non-supervisory civilian employees of the St. Louis Metropolitan Police Department their full pay during absences caused by accidents or occupational diseases arising out of and in the scope of their employment." (Emphasis added). Board interprets the emphasized language as an agreement by it to return to the status quo and as a reservation of the right to change the policy at their discretion. Police counter that the language continues to bind the Board.

We agree with the trial court's assessment of Board's interpretation of the contract. The trial court stated that Board's interpretation completely ignores the language "shall henceforth pay." In *Jim Carlson Const., Inc. v. Bailey,* 769 S.W.2d 480 (Mo.App.1989), the Western District of this court stated:

> The mere fact that the parties disagree on the interpretation of a contract does not render the document itself ambiguous. The test is whether the disputed language, in the context of the entire

agreement, is reasonably susceptible to more than one construction giving the words their plain and ordinary meaning as understood by a reasonable person. Whether a contract is ambiguous is a question of law for the court.... Furthermore, an interpretation of a contract or agreement which evolves unreasonable results, when a probable or reasonable construction can be adopted, will be rejected. (Citations omitted).

*Id.* at 482.

We believe the consent judgment at issue here can have only one reasonable interpretation. The use of the word "shall" indicates that the consent decree binds Board to pay full salary for total temporary disability. The word "henceforth" can only reasonably mean from this day forward. Thus, the agreement clearly binds the Board from the day of its entry forward.

Board's final point has to do with the proper interpretation of section 84.160.9(2) which was addressed in the discussion of the first point.

V. *Conclusion*

The Board of Police Commissioners had the authority to enter into the 1988 consent judgment requiring them to pay full salary for total temporary disability salary. Board entered into a binding agreement with the Police Officers' Association and cannot now attack that agreement collaterally. Affirmed.

CRANDALL, P.J., and GRIMM, J., concur.