In re Arthur A. LEWIS, Petitioner,

v.

Honorable Walter A. MURRAY, Jr., Associate Circuit Court Judge, Franklin County Probate Division

and

Paul Bruns, Sheriff of Franklin County, Respondents.

No. 53753.

Missouri Court of Appeals, Eastern District, Division Six.

Oct. 27, 1987.

Charles F. Dufour, St. Louis, for petitioner.

Roger Andrew Carnahan, Rolla, for respondents.

CARL R. GAERTNER, Presiding Judge.

Petitioner seeks our writ of habeas corpus after he was found guilty of civil contempt and ordered incarcerated. Pursuant to Rule 91.05, we issued an order to show cause why we should not grant the writ. Suggestions in support of and in opposition to the issuance of the writ are before this court and we have entertained oral arguments. We now issue the writ and order petitioner discharged.

Petitioner and his two sisters are the children and heirs of Plez E. Lewis, who died intestate on February 14, 1964. Petitioner was the personal representative of this estate. On June 9, 1966, petitioner filed an annual settlement showing assets of the estate valued at a total of $126,-480.87, and consisting of:

| | |
|---|---|
| Personal effects and wearing apparel $ | 250.00 |
| Corporate stocks of Farmers and Merchants Bank of St. Clair | 20,261.90 |

Promissory Notes as follows:

| | |
|---|---|
| Promissory note of Claude Hill dated October 10, 1963 in the amount of $300.00 with interest at 6% | $ 250.00 |
| Promissory note of Verna Hawley dated November 13, 1963 in the amount of $200.00 with interest at 5% | 250.00 |
| Promissory note of Arthur A. Lewis dated May 5, 1961 in the amount of $14,000.00 with interest at 6% | 14,000.00 |
| Promissory note of Arthur A. Lewis dated November 11, 1963 in the amount of $90,650.00 with interest at 5% | 87,350.00 |
| Total of Promissory Notes | 101,850.00 |
| Bank account and insurance policies | 4,118.97 |

Apparently, petitioner made no further accounting of the administration of the estate for over 20 years. On April 4, 1984, petitioner was removed as personal representative for failure to account for the assets of the estate; an administrator, D.B.N., replaced petitioner. On July 18, 1987, petitioner was served with an order to show cause why he should not be held in contempt of court for failure to file a final settlement and failure to account for the value of the assets of the estate. On August 7, 1987, the probate court of Franklin County held an evidentiary hearing. On August 17, 1987, the court issued its Judgment of Contempt and Order of Commitment. This document listed the assets of the estate as itemized in the June 9, 1966 annual settlement and further recited that petitioner:

> with knowledge of this court's order requiring him to file final settlement and account for the assets of the estate, has willfully, continually and intentionally failed and refused to comply with the terms of said order and has refused to file final settlement and account for the assets of the estate.

The court ordered that petitioner be incarcerated in the county jail until such time as he:

complies with the order of this Court by filing final settlement and accounting for the assets of the estate by delivering to the personal representative the assets of the estate.

The court stayed execution of this order until August 25, 1987, providing petitioner with an opportunity to purge himself of contempt. The court granted additional stays until September 4, 1987, and September 18, 1987. During the interim, additional hearings were held and petitioner filed his Motion to Purge Contempt and to Close Estate and also filed a purported "turnover settlement." In this motion, and apparently by his oral testimony, petitioner attempted to explain his inability to account for certain assets. Petitioner alleges that the intervening death of the two attorneys who had represented him resulted in the loss of records. On September 18, 1987, finding only that petitioner had failed to account for and deliver assets of the estate to the successor personal representative, the trial court ordered petitioner confined "until he purges himself of said contempt."

Discrepancies between petitioner's purported accounting and the court's order of commitment give rise to the irregularities patent upon the record of this case. The first unaccounted for asset mentioned in the court's order of commitment is personal effects and wearing apparel. Petitioner filed a release of all personal property signed by all three heirs. Counsel for respondents concedes to us that this is satisfactory. The second asset itemized in the court order is corporate stock of Farmers and Merchants Bank inventoried at $20,261.90. Neither petitioner's motion nor his turnover settlement mention this stock.[1] Petitioner's motion avers loss of both the $300.00 note of Claud Hill and the $200.00 note of Verna Hawley (petitioner's sister and co-heir)[2] With regard to his personal notes, petitioner alleged in his motion that the notes had been lost. He admitted the existence of the notes on the terms as inventoried, but reserved the right to de-

---

1. We are told in oral argument that this stock was sold and a partial distribution was made to petitioner's two sisters. Nothing in the record before us reflects either action.

2. We are told in oral argument that the Claud Hill note has now been found.

fend against their enforcement due to an alleged failure of consideration. The final item in the court's order, taken from the annual settlement of June 9, 1966, is "bank accounts and insurance policies—$4,118.97." Petitioner's turnover settlement purports to cover a period from April 29, 1967 to August 20, 1987. It shows a starting bank account of $8,653.79 and vouchered debits of $7,274.76 leaving a balance of $1,379.03. Petitioner's motion to purge alleges this sum was expended for payment of administration expenses, but contains no specific accounting nor supportive vouchers as required by section 473.543, RSMo. 1986. Petitioner's motion also refers to lost certificates for 47 shares of CEMO Excavators, Inc., inventoried at a value of $1,175.00, which petitioner claims are now worthless.

■ We agree with respondent's suggestion that a judgment of civil contempt is appealable and that habeas corpus may not be used as a substitute for appeal. Accordingly, we look not to the sufficiency of the evidence but only to the propriety of the record in order to determine the legality of petitioner's incarceration in this proceeding. See Ex Parte Ryan, 607 S.W.2d 888, 892 (Mo.App.1980). Because the purpose of civil contempt is to enforce compliance with a judgment or court order, the legality of the contemnor's restraint is dependent upon his ability to purge himself by compliance. State ex rel. Foster v. McKenzie, 683 S.W.2d 270 (Mo.App.1984). From this principle flows the procedural requirement that both the judgment of contempt and the order of commitment must recite the facts constituting the contempt, not simply the conclusions of the court. Brown v. Brown, 670 S.W.2d 167, 170 (Mo.App.1984); Ex Parte Ryan, 607 S.W.2d at 891–92. Vague, uncertain judgments and orders which do not set forth the specific requirements for compliance do not inform the contemnor of what he must do in order to purge himself and thus they are flawed. Saab v. Saab, 637 S.W.2d 790, 793 (Mo.App.1982). A judgment is not sufficient if it merely makes a blanket reference to non-compliance with court orders. In Re

Marriage of Vanet, 544 S.W.2d 236, 246 (Mo.App.1976).

Guided by these principles, we find obvious inadequacies in the judgment of contempt and the order of commitment. The order of September 18, 1987, which confined petitioner to the Franklin County Jail, contains no factual findings and requires, as a means of purgation, a requirement that petitioner account for and turn over "the assets of the estate." On the basis of the record before us we are unable to identify the present assets of the estate. Of considerably more importance, the order fails to advise petitioner what he must do in order to purge himself of contempt and gain his release. If we assume the prior order of August 17, 1987, was incorporated into the September 18, 1987 order of commitment, an action not expressed in the later order and the propriety of which we do not decide, the requirements for purgation only become more confusing and uncertain. The earlier order refers to bank stock and household goods which are admittedly no longer assets of the estate. The order does not mention the stock of CEMO Excavating, Inc., which petitioner concedes is an asset of the estate although he contends it is worthless. The earlier order requires him to account for $4,118.97 from a bank account, whereas he has filed vouchers accounting for expenditures of $7,274.76.

The confusion resulting from the unrecorded developments during the court-ordered stay of execution can only leave petitioner, and this court, in a quandary. The order of commitment fails to disclose the court's acceptance, if any, of any part of petitioner's attempted accounting for the assets listed in the original order. For example, it is entirely possible that the court is satisfied with petitioner's admission of the existence of his personal notes, thus opening the door to an action to recover their value, and has ordered him incarcerated because of his failure to account for the $1,379.03 from the bank account. However, in the present posture of the record, neither he nor we can determine what he must do in order to obtain his release.

■ We fully understand the resort to drastic action when an effort to bring inexcusably prolonged probate administration to a conclusion is frustrated by what may appear to the trial court to be recalcitrant delay and evasion. Nevertheless, deprivation of liberty must comport with the requirements of due process. Petitioner is entitled to a final judgment of contempt and an order of commitment which detail the specific findings of fact upon which the court bases its conclusion that he has failed to account for assets of the estate, the specific facts upon which the court bases its conclusion that he has failed to turn over assets in his possession or control, and the specific actions he must take in order to purge himself of contempt.

The petition for writ of habeas corpus is granted and petitioner is ordered discharged.

GRIMM and SIMON, JJ., concur.