STATE of Missouri, ex rel., MISSOURI DAM AND RESERVOIR SAFETY COUNCIL, Appellant,

v.

ROCKY RIDGE RANCH PROPERTY OWNERS ASSOCIATION and Areaco Development Company, Respondents.

No. 71062.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 26, 1997.

Jeremiah (Jay) Nixon, Attorney General, Kara L. Johnson, Asst. Attorney General, Jefferson City, for appellant.

Dana Hockensmith, Emily C. Aschinger, Weier, Hockensmith & Sherby, P.C., St. Louis, Clinton B. Roberts, Roberts, Roberts & Pratte, Farmington, for respondents.

SIMON, Judge.

Appellant, State of Missouri ex rel., the Missouri Dam and Reservoir Safety Council (Council), appeals the denial of its motion for civil contempt by the Ste. Genevieve County

Circuit Court in favor of respondent, Areaco Development Company (Areaco).

Areaco filed a motion to dismiss the appeal for Council's failure to comply with the briefing requirements of Rule 84.04 and failure to preserve an issue for appeal. The motion was ordered taken with the case. We deny the motion.

On appeal, Council contends that the trial court erred in interpreting the Amended Consent Decree and failing to find Areaco in contempt of the Amended Consent Decree by ignoring the intent of the parties and determining that Areaco had no obligations under the Amended Consent Decree which, when read as a whole, imposed joint and several responsibility on Areaco, as one of the owners of the dams, to repair the deficiencies of the dams. We reverse and remand.

On review of a civil contempt case, we will not disturb a trial court's ruling in the absence of a clear abuse of discretion. *Goss v. Porter*, 928 S.W.2d 902, 904 (Mo.App.1996). The subject of this appeal is the interpretation of a consent decree, entered into by Areaco, Council and Rocky Ridge Property Owners Association (POA), which the trial judge signed. The interpretation of a consent decree is a question of law. *St. Louis Police Officers Ass'n v. Bd. Of Police Comm'rs*, 846 S.W.2d 732, 740 (Mo.App. 1992).

The record shows that Areaco is a Missouri corporation, owned by Arthur Collins (Collins), and located in Ste. Genevieve County, Missouri. On April 6, 1966, Areaco recorded a plat (Ranch Plat), in the records of Ste. Genevieve County, Missouri. As owner of the real estate described in the Ranch Plat, Areaco developed the property as a rural residence and recreational area and named the area "Rocky Ridge Ranch" (Rocky Ridge). Areaco constructed three dams on Rocky Ridge, and the three reservoirs impounded by these dams were respectively named Lake Wanda Lee, Lake Ocie and Lake Ski. There are 3,300 lots in Rocky Ridge. In its reply brief, Areaco stated that it owns approximately 2,200 of the 3,300 lots in Rocky Ridge.

On April 6, 1966, Areaco published, declared and entered into a Restriction Agreement (Agreement) with the landowners of real estate located in Rocky Ridge. The Agreement was recorded in the Ste. Genevieve County Recorder of Deeds Office, and provided that title to the reservoirs and dams remain with Areaco. The Agreement gave Areaco the right to assess owners of the land, and to put all money collected in an "Assessment Fund" (Fund). The Agreement also provided that Areaco, by utilizing the Fund, be responsible for the upkeep and maintenance of the dams. From April 6, 1966 to August 12, 1988, Areaco acted as trustee of the Fund.

On August 12, 1988, the Circuit Court of Ste. Genevieve County, Missouri, entered a judgment in the case of Carol Billingsley, et al. v. Areaco Investment Company, case number CV–887–67–CC, against Areaco. The circuit court found several instances where Areaco had abused its discretion and used Fund monies to benefit itself to the detriment of Rocky Ridge lot owners and removed Areaco as trustee and designated POA, a non-profit Missouri corporation, to represent the owners of the lots as successor trustee of the Fund. From August 12, 1988, to the present, Areaco has continued to hold title to the land, including the lakes and dams, on Rocky Ridge. POA, however, acts as trustee of the Fund and as such, under the terms of the Agreement, controls, operates, maintains, and manages the lakes and dams.

All property owners in Rocky Ridge are subject to the Agreement so that the dams may be safely maintained thus allowing POA and Areaco to apply and receive registration permits for all three dams. Since POA is trustee of the Assessment Fund, it is responsible for spending Fund monies on the upkeep and maintenance of the dams, and lakes.

All parties agree that the dams are regulated by Dam and Reservoir Safety Law, section 236.400, et al., RSMo 1994 (all references hereinafter will be to RSMo 1994 unless otherwise noted). Section 236.440 is designed to ensure the construction, management and operation of the dams and reservoirs in a manner which will provide ade-

quate protection to public safety, life or property. 10 CSR 22–1.1010(2). The registration permit reflects that a dam has no observable defects such as slides, excessively steep slopes, seepage, or inadequate spillway capacity. 10 CSR 22–3.030. The owner of the dam is responsible for obtaining the registration permit, and Section 236.400(13) provides, in pertinent part, that the owner of a dam is a person who:

> owns, controls, operates, maintains, manages, or proposes to construct a dam or reservoir including:
>
> * * *
>
> (e) A natural person, firm, partnership, association, corporation, political subdivision, or legal entity;
>
> (f) The duly authorized agents, lessees, or trustees of any of the foregoing;
>
> (g) Receivers or trustees appointed by any court for any of the foregoing;

On February 22, 1993, Council filed a petition for injunction against Areaco and POA, alleging that the three dams did not have adequate spillway capacity and needed to be upgraded or repaired before the dams were eligible for registration permits. Since Areaco holds title to the three dams, and POA, as the trustee of the Fund, controls, operates and maintains the dams, both are responsible for obtaining registration permits for the dams. Sections 236.400(13) and 236.440(3).

On March 25, 1993, Areaco, Council, and POA entered into a Stipulation and Consent Decree, which was approved by the trial judge and required that Areaco and POA complete the spillway repairs to the three dams by December 31, 1994.

The terms of the original Decree were not met, and Areaco, Council and POA entered into the First Amended Consent Decree (Consent Decree), which incorporated a Stipulation of Facts. The trial judge entered the Consent Decree on July 13, 1994. The Stipulation of Facts listed Areaco and POA as "defendants." The Consent Decree provided, as to each of the three dams, that defendants repair the dams, maintain the lakes, and acquire registration permits for each dam. Further, defendants were to properly maintain the lakes or face a $5000 daily penalty for each lake, and to repair the dams by December 31, 1995, or pay a $10,000 civil penalty for each dam left unrepaired at that time. Alternatively, if the terms of the Consent Decree were not met, defendants were to breach the dams. The Consent Decree was signed by Collins as President of Areaco, David Gjerswald as President of POA, Kara Johnson, Assistant Attorney General for the State of Missouri, and the trial judge.

POA, as trustee, imposed a special assessment to fund repairs and modifications to the dams on Rocky Ridge property owners and on receipt of payment, placed the money in the Fund. A number of the property owners did not pay the special assessment. POA repaired one dam (Wanda Lee), and due to lack of money, it could only begin work on the second dam and did nothing to the third dam.

POA, realizing that the three dams would not be repaired by December 31, 1995 as required by the Consent Decree, filed a motion to reduce the Consent Decree to a judgment on August 3, 1995. POA attempted to obtain a lien on Areaco's real property as well as a contempt order against Areaco. On November 16, 1995, the circuit court granted Areaco's motion to quash POA's motion. On December 20, 1995, POA's petition for a writ of prohibition was denied.

On May 31, 1996, Council filed a motion for civil contempt against Areaco. The motion for contempt sought specific performance of the Consent Decree by Areaco and was directed solely at Areaco since POA had made an effort to comply with the Consent Decree and Areaco had failed to make any effort. Additionally, Council asked that Areaco be assessed up to $1000 per day for each day it is in violation of the Consent Decree and $30,000 in stipulated penalties as set out in the Consent Decree. If Areaco and POA did not obtain registration permits by December 31, 1996, Council asked that the dams be breached.

Council's motion for contempt was heard on July 16, 1996. The record does not indicate that any evidence was presented, other than Areaco, Council and POA's agreement

that the dams did not have registration permits and that the Consent Decree required the three dams to have the permits by December 31, 1995. Council argued that Areaco was responsible for repair of the dams because the Consent Decree should be interpreted in its entirety, giving full effect to the intent of the parties. Additionally, Council argued that Areaco neither contributed to the Fund as property owners nor supplied any funding for repairs to the dams. Areaco, neither admitting nor denying the payment of money to the Fund, responded that the Stipulation of Facts of the Consent Decree, paragraphs 25, 26, and 27 specifically established that all funding for repair of the dams was to be provided for by the Fund and as such, was a condition precedent to Areaco's ability to apply for registration permits. Paragraphs 25, 26, and 27 of the Stipulation of Facts provides:

> 25. All property owners in Rocky Ridge Ranch are subject to the Restriction Agreement. Consequently, all property owners are responsible to support an assessment in sufficient amount to fund repairs and modifications to Lake Wanda Lee Dam, Lake Ocie Dam and Lake Ski Dam in order that the POA and Areaco may apply for and receive a registration permit for all three dams.
>
> 26. Since the POA is the trustee of the Assessment Fund, the POA is responsible to spend the Assessment Fund monies of the "upkeep and maintenance of the ... dams, [and] lakes," including Lake Wanda Lee Dam, Lake Ocie Dam and Lake Ski Dam.
>
> 27. The POA as trustees, control, operate, maintain and manage Lake Wanda Lee Dam, Lake Ocie Dam and Lake Ski Dam.

Areaco made motions to dismiss Council's motion for contempt based on lack of proof and ambiguity of the Consent Decree. The trial court denying Council's motion for contempt stated:

> The consent decree recites and recognizes the responsibility of all property owners to be responsible to support an assessment in sufficient amount to fund repairs to all three dams. Your motion for contempt

would have to fail for lack of proof. Motion is denied.

The trial court focused on Areaco's obligation under the Consent Decree and made no findings of fact or conclusions of law.

In its sole point on appeal, Council contends the trial court erred in interpreting the Consent Decree and failing to find Areaco in contempt of the Consent Decree by ignoring the intent of the parties and determining that Areaco had no obligations under the Consent Decree where, when read as a whole, it imposed joint and several responsibility on Areaco, as one of the owners of the dams, to repair the deficiencies of the dams. Areaco contends that the Council did not present sufficient proof before the trial court that Areaco had an obligation to fund repairs to the dams. Areaco contends that the Stipulation of Facts, paragraphs 25, 26 and 27 fix the liability for repair of the dams on the property owners and POA. Additionally, Areaco contends that it has no authority or ability to access the assessment funds due to POA's control of the funds.

■ Our Supreme Court has stated that civil contempt is intended to benefit a party for whom an order, judgment, or decree was entered, and its purpose is to coerce compliance with the relief granted. *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo.banc 1994). A prima facie case for civil contempt is established when the party alleging contempt proves: 1) the contemnor's obligation to pay a specific amount or perform an action as required by the decree; and 2) the contemnor's failure to meet the obligation. *Watkins v. Watkins*, 839 S.W.2d 745, 747 (Mo.App.1992). When a prima facie case is established, the contemnor then bears the burden of proving his or her inability to make payments or perform an action and that noncompliance was not an act of contumacy. *Id.* Here, the record does not indicate that any evidence was presented, other than Areaco, Council and POA's agreement that the dams did not have registration permits and that the Consent Decree required the three dams to have the permits by December 31, 1995.

■ The interpretation of Areaco's obligation under the Consent Decree is a matter of law. It is important to note that the Consent Decree does not represent the decision of a judge after a hearing upon disputed issues, rather, it is an agreement between the parties to resolve their differences. *Boillot v. Conyer*, 887 S.W.2d 761, 763–64 (Mo. App.1994). Thus, the Consent Decree is contractual in nature. When interpreting this decree, we endeavor to ascertain not only the intent of the court entering judgment, but the intentions of the parties by viewing the agreement in its entirety. *Id.* at 763. Further, a decree which is ambiguous and uncertain will not support an order of contempt. *Missouri Federation of Blind v. National Federation of Blind, Inc.*, 546 S.W.2d 182, 185 (Mo.App.1976). It must be sufficiently definite to protect the complaining party and at the same time not be so general as to unjustly circumscribe the rights of the party enjoined. *Id.* We have previously stated:

> The mere fact that the parties disagree on the interpretation of a contract does not render the document itself ambiguous. The test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible to more than one construction giving the words their plain and ordinary meaning as understood by a reasonable person. Whether a contract is ambiguous is a question of law for the court ... Furthermore, an interpretation of a contract or agreement which involves unreasonable results, when a probable or reasonable construction can be adopted, will be rejected.

*St. Louis Police Officers Ass'n*, 846 S.W.2d at 740.

■ Here, the Consent Decree was created, recognized and consented to by Areaco, Council and POA and is not ambiguous. In its Stipulation of Facts, the Consent Decree names Areaco and POA as "defendants." In its entirety, the Consent Decree clearly states that if the lakes are not maintained or the repairs to the dams are not completed on time, "defendants"shall be assessed, jointly and severally, stipulated monetary penalties. The Consent Decree orders "defendants" to remove and eliminate the dams if the repairs and improvements are not completed by the "defendants" on time, and is signed and acknowledged by POA and Areaco as "defendants." Additionally, Areaco, as title holder to the dams, is an owner under Sections 236.400(13) and 236.440(3) and therefore, is responsible for obtaining registration permits for the dams. The Consent Decree, as a whole, clearly provides that Areaco and POA are responsible for maintaining the lakes, repairing the dams and obtaining registration permits by December 31, 1995. Further, the Consent Decree is sufficiently definite to define the duties and protect the rights of the parties involved.

■ Areaco's reliance on paragraphs 25, 26 and 27 of the Stipulation of Facts is misplaced, since the Stipulation of Facts is not read in isolation but in accordance with the entire Consent Decree. Further, its argument that it had no authority or ability to reach the Fund is not relevant because a party's inability to comply with the terms of a decree is an affirmative defense asserted once a prima facie case of contempt has been shown. Here, the record indicates that an evidentiary hearing was not conducted, rather, the trial court focused on Areaco's lack of responsibility under the Consent Decree to maintain the lakes and repair the dams. Therefore, the trial court erred in finding that Areaco was not responsible under the Consent Decree, and we must reverse and remand the judgment for further proceedings.

JUDGMENT REVERSED AND REMANDED.

RHODES RUSSELL, P.J. and KAROHL, J., concur.