Austin **TASHMA**, Respondent,

v.

**NUCROWN, INC., and Charles D. Matthews, Appellants.**

No. ED 76158.

Missouri Court of Appeals, Eastern District, Division One.

July 18, 2000.

Scott J. Hill, Edwards, Singer, Watkins & Spoeneman, L.L.P., St. Louis, for appellant.

Charles A. Seigel, III, Michael A. Wolff, Seigel & Wolff, P.C., St. Louis, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellants, Nucrown, Inc. and Charles D. Matthews, ("Nucrown"), appeal the judgment and order of contempt issued on November 10, 1998, by the Circuit Court of St. Louis County, holding them in contempt for failing to provide Respondent, Austin Tashma, ("Tashma"), with audited financial statements for the period of June 1, 1991, through May 31, 1996. We reverse and remand in part and affirm in part.

This case originated pursuant to the sale of Tashma's optometry practice to Nucrown in May of 1991. Both parties entered into an asset purchase agreement, ("agreement"). The agreement, in pertinent part, stated the following:

> [Nucrown] shall pay the Purchase Price as follows: (i) Twenty Thousand Dollars ($20,000.00) paid on the Closing Date ... (ii) Balance of Fifty–Five Thousand Dollars ($55,000.00) payable as follows: [Tashma] will receive fifty percent (50%) of Net Profits in excess of Thirty Thousand Dollars ($30,000.00) per annum earned by [Nucrown] at its Lemay Ferry Road location ... until the earlier of (i) a five (5) year period of time from the date of closing, or (ii) [Tashma's] payments received under the earn-out arrangement total Fifty Thousand Dollars ($50,000.00). No later than sixty (60) days after the close of [Nucrown's] fiscal year [Nucrown] shall forward to [Tashma] a certified statement prepared by its certified public accountant setting forth the profits and losses attributable to the Lemay Ferry store ... and such other documents necessary to determine the amount due, if any, under this Agreement.... In addition, Five Thousand Dollars ($5,000.00) will be paid to [Tashma] after ninety (90) consecutive days of employment.

Tashma contended he was not provided with financial statements pursuant to the agreement and filed an equity action in the Circuit Court of St. Louis County. On October 25, 1996, the trial court issued an order in equity requiring Nucrown to provide Tashma with "annual audited financial statements prepared by a Certified Public Accountant for the period commencing June 1, 1991 through May 31, 1996," within ninety days of the order.

Nucrown appealed the order in equity and this court affirmed the order. On June 26, 1998, Nucrown, concerned with the prospect of spending a significant amount of money on the preparation of audited financial statements, filed a motion for clarification of the order in equity. In their motion for clarification, Nucrown claimed the accounting firms they were interviewing could not produce an "unqualified audit" for the period in question. In response, Tashma filed a motion for contempt because he had yet to receive any "audited financial statements" within ninety days of the order in equity.

On July 2, 1998, the trial court denied Nucrown's motion for clarification and granted, in part, Tashma's motion for contempt. The trial court issued an order compelling Nucrown to "produce the documents in compliance with the Court's Judgment of October 25, 1996, within 30 days." The trial court ordered Nucrown to pay a $500 per diem fine for each day in which they failed to comply with the trial court's order. The $500 per diem fine was to begin on August 2, 1998.

Nucrown retained the accounting firm of Schmersahl, Treloar & Company. Jim Schmersahl, ("Schmersahl"), was chosen to be the supervising accountant.

On July 31, 1998, Nucrown delivered to Tashma documents entitled "special purpose profit and loss statements" for the period in question. Claiming the documents failed to comply with trial court's judgment and contempt order, Tashma filed another motion for contempt on August 18, 1998.

On September 25, 1998, the trial court held an evidentiary hearing on Tashma's motion for contempt. At the hearing, Tashma adduced testimony from his expert, Michael J. Prost, ("Prost"). Prost, a certified public accountant with nineteen years' experience, testified the "special purpose profit and loss statements" provided by Nucrown did not meet the criteria of "audited financial statements" as defined by Statement On Auditing Standards No. 29. Therefore, Prost concluded Nucrown failed to comply with the trial court's judgment and contempt order.

However, Schmersahl, who testified for Nucrown, stated he reviewed the trial court order in equity of October, 25, 1996, as well as the agreement in question. Schmersahl testified the reports he issued were "audited financial statements" that complied with the order in equity. Schmersahl testified he and his staff had complete access to Nucrown's books and records and Nucrown fully cooperated with the "audit."

On November 10, 1998, the trial court issued its judgment and order of contempt. The trial court found Nucrown in contempt of both its October 25, 1996, and July 2, 1998, orders. The November 10, 1998, judgment and order of contempt stated:

... because [Nucrown has] failed and refused to comply with this Court's Judgment and Order regarding the production of financial documents necessary to determine the amount due [Tashma] under the Asset Purchase Agreement, [Nucrown] shall pay a compensatory fine to [Tashma]. In this Court's Order of Contempt of July 2, 1998, [Nucrown was] ordered to produce said financial documents within 30 days of the Order and pay a compensatory fine in the amount of $500.00 for each day thereafter until these documents are produced. Accordingly, this Court enters final judgment in the amount of $50,500 representing the per diem compensatory fine from August 2, 1998 through No-

vember 10, 1998. This compensatory per diem fine shall continue until [Nucrown complies] with this Court's Judgment and Order of Contempt. The maximum compensatory fine shall be $50,000 plus interest at nine percent (9%) from October 25, 1996 in the amount of $9,197.26. This amount represents the monetary loss [Tashma] suffered under the Asset Purchase Agreement as a result of [Nucrown's] refusal to produce the financial documents required under the Asset Purchase Agreement.

Nucrown was also to pay Tashma $6,272.00 for attorney's fees and costs. Nucrown appeals the November, 10, 1998, judgment and order of contempt.

■ Nucrown raises three points on appeal. In their first point, Nucrown alleges the trial court erred in issuing its judgment and order of contempt because the contempt order does not recite the specific facts and circumstances constituting contempt and the order was vague, recites mere conclusions, and does not set forth what Nucrown must do to purge themselves of the contempt. We disagree with Nucrown's contention that the judgment order was vague and did not recite specific facts and circumstances constituting contempt; however, we agree the trial court failed to specifically state what Nucrown must do to purge themselves of the contempt.

■ In a civil contempt case, a blanket reference to non-compliance with a court order which does not set forth the specific requirements for compliance, does not inform contemnors of what they must do to purge themselves of contempt; thus, the judgments are flawed. *Lewis v. Murray*, 738 S.W.2d 953, 956 (Mo.App. E.D. 1987). Contemnors are entitled to a final judgment of contempt which details the specific actions they must take to purge themselves of the contempt. *Id.* at 957.

The trial court's judgment and order of contempt of November 10, 1998, simply stated "[Nucrown has] failed and refused to comply with this Court's Judgment and Order regarding the production of financial documents necessary to determine the amount due [Tashma] under the Asset Purchase Agreement." If we are to incorporate by reference the October 25, 1996 judgment of the trial court, then "[Nucrown] [is] to provide [Tashma] with annual audited financial statements prepared by a Certified Public Accountant for the period commencing June 1, 1991 through May 31, 1996." Tashma argues the October 25, 1996 judgment in conjunction with the November 10, 1998 judgment and order of contempt specifically states what it is Nucrown must produce to purge themselves of contempt. While this contention by Tashma evidences the trial court's judgment and contempt order does recite the specific facts constituting contempt, it does not evidence what specific requirements Nucrown must meet to purge the contempt.

For example, if Nucrown pays the maximum compensatory fine of $50,000 to Tashma, (assuming Tashma proves damages as such), does that satisfy the contempt order or is Nucrown still required to submit annual audited financial statements prepared by a certified public accountant? Based upon the trial court's judgment and order of contempt, it is unclear what Nucrown must do to purge the contempt.

■ In their second point, Nucrown alleges the trial court erred in issuing its judgment and order of contempt because the fine levied against them in the contempt is not a compensatory fine, but a penalty. Nucrown argues Tashma introduced no evidence of damages and the fine is completely unrelated to the performance being sought. We agree.

■ "The purpose of civil contempt is to remedy, not punish." *Levis v. Markee*, 771 S.W.2d 928, 932 (Mo.App. E.D.1989). "A fine for civil contempt is remedial and provides a coercive means of compelling compliance with a court order and/or of compensating complainant for losses sus-

tained due to noncompliance." *Id.* "Generally, an outright fine, unrelated to actual damages, is not appropriate for civil contempt because it is not designed to cure but is intended to punish." *Id.* "A per diem fine that expires when the contemnor complies with the order is proper." *Id.* A per diem fine "properly bears some relation to damages occasioned by the default in performance." *Wisdom v. Wisdom,* 689 S.W.2d 82, 87 (Mo.App. W.D.1985).

In the case at bar, Tashma never testified nor put on any evidence as to the damages he suffered by Nucrown's failure to produce the annual audited financial statements. Therefore, the trial court's $500 per diem fine bears no relation to damages occasioned by Tashma's default in performance. Also, the "maximum compensatory fine" of $50,000, levied by the trial court, is not proper. The trial court based the $50,000 figure on "the monetary loss [Tashma] suffered under the Asset Purchase Agreement as a result of [Nucrown's] refusal to produce the financial documents required under the Asset Purchase Agreement." However, Tashma never testified nor produced any evidence of any monetary loss suffered under the agreement. In fact, Schmersahl testified, based upon the profit and loss statements he prepared, "Tashma isn't owed any money." Tashma did not sue Nucrown for money damages; rather, this was a suit in equity to compel Nucrown to produce a certain type of financial statement.

Furthermore, the $500 per diem fine is not proper because pursuant to the November 10, 1998 judgment and order of contempt, it already expired before Nucrown was given a chance to comply. The trial court entered a "final judgment in the amount of $50,500.00 representing the per diem compensatory fine." Although the trial court goes on to state the compensatory per diem fine shall continue until Nucrown complies, in the next sentence, the trial court contradicts itself by stating the "maximum compensatory fine shall be $50,000.00." The $50,000 fine is unrelated

to the performance sought because it does not coerce compliance with the trial court's judgment and order of contempt. The contradictory and confusing language of the judgment and order of contempt prohibits Nucrown from purging the contempt because the maximum compensatory fine has already been levied against them. The judgment and order of contempt violate the spirit of civil contempt which provides a coercive means of compelling compliance.

■ In their third point, Nucrown alleges the trial court erred in issuing its judgment and order of contempt because Tashma did not establish by clear and convincing evidence, that Nucrown's conduct constituted contempt where there was no willful disobedience of a court order within Nucrown's power to perform. We disagree.

■ The appellate court must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). "A prima facie case for civil contempt is established when the party alleging contempt proves: 1) the contemnor's obligation to pay a specific amount or perform an action as required by the decree; and 2) the contemnor's failure to meet the obligation." *State, ex rel., Mo. Dam v. Rocky Ridge,* 950 S.W.2d 925, 928 (Mo. App. E.D.1997). "When a prima facie case is established, the contemnor then bears the burden of proving his or her inability to make payments or perform an action and that the non-compliance was not an act of contumacy." *Id.* Generally, for civil contempt, the rule is the contemnor need not have acted willfully. *Chemical Fireproofing Corp. v. Bronska,* 553 S.W.2d 710, 716 (Mo.App.St.L.D.1977).

Based on the record, the trial court did not err in issuing its judgment and order of contempt. Since this was a civil contempt, Nucrown's willful disobedience of a

court order need not be established. There was substantial evidence to establish a prima facie case for civil contempt by Nucrown. Based on the record and evidence presented, Nucrown failed to meet their obligation of producing the financial statements at issue. Furthermore, based on the evidence presented to the trial court, Nucrown failed to meet the burden of proving their inability to comply with the court's order and Nucrown failed to show their non-compliance was not an act of contumacy. In light of the record, there was substantial evidence to support the trial court's judgment and order of contempt against Nucrown.

The adjudication of contempt against Nucrown is affirmed; however, the judgment and order of contempt, as to the specific requirements for Nucrown to purge the contempt and the fines levied against Nucrown, is flawed. Therefore, we reverse and remand for reconsideration as to the money sanctions and the specificity of the requirements to purge the contempt.

PAUL J. SIMON, J., and JAMES R. DOWD, J., concur.