IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 GINGER M. WILSON, )
 )
 Appellant, )
 WD84191
 v. )
 )
 OPINION FILED:
 )
 January 25, 2022
 GREGORY S. WILSON, )
 )
 Respondent. )

 Appeal from the Circuit Court of Randolph County, Missouri
 The Honorable Mason R. Gebhardt, Judge

 Before Division One: W. Douglas Thomson, Presiding Judge, and
 Alok Ahuja and Karen King Mitchell, Judges

 Ginger Wilson (Wife) appeals the judgment finding Gregory Wilson (Husband) in

contempt of court for failing to distribute half of Husband’s American Funds retirement account

(the account) to Wife as directed by the parties’ judgment of dissolution. Wife raises one point on

appeal; she argues that the motion court abused its discretion when it determined that the phrase,

“releases and quit-claims” as used in the dissolution judgment, is ambiguous and, therefore, the

distribution method, but not the date, used by Husband was appropriate. Because the motion court

misinterpreted the dissolution judgment as to distribution of the account, we remand this case for

further proceedings consistent with this opinion.
 Background

 On December 20, 2018, the parties entered into a separation agreement that identified and

divided their marital property. On December 26, 2018, the court approved the separation

agreement and entered a judgment and decree of dissolution of marriage that incorporated the

separation agreement by reference. The court determined that the separation agreement identified

and divided all marital property and debt, and the court ordered the parties to perform the terms of

the separation agreement. In relevant part, the separation agreement requires Husband to “release[]

and quit-claim[] to Wife all his right, title and interest in and to . . . [o]ne-half (1/2) plus an

additional $20,000 from the American Funds Account #3450 as of the date of Judgment entry[.]”

The agreement also requires Wife to “release[] and quit-claim[] to Husband all her right, title and

interest in and to . . . [o]ne-half (1/2) minus $20,000 from the American Funds Account #3450 as

of the date of Judgment entry.” The record indicates that the account was in Husband’s name and

that he controlled how the account was invested.

 In April 2019, at Husband’s direction, American Funds calculated the total market value

of the shares in the account (the market-value approach) using December 20, 2018, the date of the

separation agreement, as the benchmark date. On April 16, 2019, American Funds transferred to

Wife a number of shares at their then-current market price that equaled the value of 50% of the

shares on the benchmark date plus $20,000. Because the value of the shares had increased

significantly during the nearly four months that had passed since the benchmark date, Wife

received less than 50% of the shares on April 16, 2019. American Funds’ method of dividing the

account had the effect of giving to Husband all of the appreciation in the monetary value of the

account from the date of the dissolution judgment through the date of the account’s division.

 2
 On October 31, 2019, Wife filed a motion for contempt to enforce the terms of the

dissolution judgment. Wife argued that, under the judgment, she is entitled to one half of the

shares in the account on December 26, 2018 (the division-of-shares approach), plus $20,000, not

one half of the value of the shares on that date. A show-cause summons was issued to Husband,

who moved to dismiss both Wife’s application for a show-cause order and her motion for

contempt. The motion court held an evidentiary hearing on September 30, 2020.1

 On November 3, 2020, the court issued its judgment, finding Husband in contempt

“through no fault of his own.” The court concluded that the separation agreement was ambiguous

as to whether the parties intended to use the market-value approach or the division-of-shares

approach when dividing the account. The court interpreted the agreement in favor of the

non-drafting party (Husband) and awarded Wife $2,222.87, representing one half of the difference

in the cash value of the shares on December 20, 2018 (the date of the separation agreement) and

December 26, 2018 (the date the dissolution judgment was entered). Wife appeals.

 Jurisdiction and Standard of Review

 Although both Wife and the motion court denominated Wife’s motion as one for contempt,

a legal document “is not judged by its title but by its substance and content.” State ex rel. Ashby

Rd. Partners, LLC v. State Tax Comm’n, 297 S.W.3d 80, 84 (Mo. banc 2009). Here, the court

appropriately treated the motion as one to enforce the terms of the parties’ dissolution judgment

rather than as a motion for contempt. The court described Wife as “seeking specific performance”

of the dissolution judgment because, Wife argued, the account was not divided as required by that

judgment. The court specifically concluded that no contumacious conduct had occurred, instead

 1
 The record on appeal does not contain a transcript of the evidentiary hearing or copies of any evidence
admitted during the hearing.

 3
finding that Husband was “in contempt” “through no fault of his own.”2 And, it appears the

amount awarded to Wife was intended to make her whole under the dissolution judgment, as

interpreted by the court, rather than to alter Husband’s conduct. Typically, a fine imposed after a

finding of contempt is a per diem fine intended to encourage performance and, thus, to purge the

contempt. See Smith v. White, 67 S.W.3d 742, 747 (Mo. App. W.D. 2002) (“The most typical

form of sanction imposed in civil contempt proceedings is the per diem fine, where the contemnor

is ordered to pay a given amount of money per day until such time as the contempt is purged.”).

A contempt fine may be the amount deemed necessary to compensate for a loss, Chemline Inc. v.

Mauzy, 618 S.W.3d 701, 710 (Mo. App. E.D. 2021), but nothing about the way the judgment is

framed suggests that is what the court did here. Rather, the court describes the amount awarded

to Wife as “[t]he difference in value of the shares in question,” which sounds more like an attempt

to enforce the dissolution judgment than one intended to purge contempt. For these reasons, we

treat the judgment below as one entered to enforce the dissolution judgment.

 We have an obligation, acting sua sponte if necessary, to determine our authority to hear

the appeals that come before us. McConnell v. West Bend Mut. Ins. Co., 606 S.W.3d 181, 187

(Mo. App. W.D. 2020). “The right to appeal is purely statutory and, where a statute does not give

a right to appeal, no right exists.” Id. (quoting Wilson v. City of St. Louis, 600 S.W.3d 763, 767

(Mo. banc 2020). Here, we have jurisdiction to hear this appeal under § 512.020(5),3 which

provides, in pertinent part,

 2
 “A prima facie case for civil contempt is established when the party alleging contempt proves: 1) the
contemnor’s obligation to pay a specific amount or perform an action as required by the decree; and 2) the contemnor’s
failure to meet the obligation.” Tashma v. Nucrown, Inc., 23 S.W.3d 248, 252 (Mo. App. E.D. 2000) (quoting State
ex rel. Mo. Dam & Reservoir Safety Council v. Rocky Ridge, 950 S.W.2d 925, 928 (Mo. App. E.D. 1997)). “When a
prima facie case is established, the contemnor then bears the burden of proving his or her inability to make payments
or perform an action and that the non-compliance was not an act of contumacy.” Id. (quoting State ex rel. Mo. Dam,
950 S.W.2d at 928). Here, Wife established a prima facie case, but the court clearly found no contumacious conduct
by Husband.
 3
 All statutory references are to the Revised Statutes of Missouri (Cum. Supp. 2019).

 4
 Any party to a suit aggrieved by any judgment of any trial court in any civil cause
 from which an appeal is not prohibited by the constitution, nor clearly limited in
 special statutory proceedings, may take his or her appeal to a court having appellate
 jurisdiction from any:

 ...

 (5) Final judgment in the case or from any special order after final judgment in the
 cause; but a failure to appeal from any action or decision of the court before final
 judgment shall not prejudice the right of the party so failing to have the action of
 the trial court reviewed on an appeal taken from the final judgment in the case.

§ 512.020(5).

 “A special order after final judgment includes ‘orders in special proceedings attacking or

aiding the enforcement of [a] judgment after it has become final in the action in which it was

rendered.’” McGathey v. Matthew K. Davis Tr., 457 S.W.3d 867, 873 (Mo. App. W.D. 2015)

(quoting State ex rel. Koster v. Cain, 383 S.W.3d 105, 111 (Mo. App. W.D. 2012)). Orders

enforcing the provisions of dissolution decrees are special orders within the meaning of

§ 512.020(5). See Roberts v. Roberts, 432 S.W.3d 789, 792 n.1 (Mo. App. W.D. 2014)

(“Rulings . . . which seek to implement the property division ordered in an earlier dissolution

decree[] are appealable ‘special order[s] after final judgment’ under § 512.020(5).”); Breihan v.

Breihan, 269 S.W.3d 38, 41 (Mo. App. E.D. 2008) (holding that a family court judgment seeking

to enforce the property distribution provisions of a dissolution decree was a special order

appealable under § 512.020(5)); see also Worley v. Worley, 19 S.W.3d 127, 129 (Mo. banc 2000)

(holding that an order denying wife’s motion to quash purported service and set aside judgment

on husband’s motion to modify custody was appealable as a special order after a final judgment).

Wife filed her motion for contempt to enforce a property distribution provision of the parties’

 5
dissolution judgment, which is a final judgment.4 Thus, the contempt judgment in this case is a

special order under § 512.020(5), and we have jurisdiction to hear the appeal.5

 “We review the trial court’s judgment on a motion to enforce [a property distribution]

agreement to determine whether it is supported by substantial evidence, whether it is against the

weight of the evidence or whether it erroneously declares or applies the law.” Nguyen v. Nguyen,

573 S.W.3d 150, 153 (Mo. App. E.D. 2019).

 Analysis

 Wife raises one point on appeal; she argues that the motion court erred when it determined

that the phrase, “releases and quit-claims” as used in the dissolution judgment, is ambiguous and,

therefore, the distribution method used by Husband was appropriate. Wife contends that the

dissolution judgment is unambiguous and, under the judgment, she is entitled to beneficial

ownership of half of the shares in the account as of December 26, 2018, rather than half of the

value of the shares in the account on that date, plus $20,000. And she claims that the

backward-looking, market-value approach used by Husband denied her the benefit of market

increases that occurred after December 26, 2018, such that the value Wife received in April 2019

 4
 As we have recently held,

 For purposes of section 512.020(5), a “final judgment” must satisfy two criteria: (1) it must be a
 judgment (i.e., it must fully resolve at least one claim in a lawsuit and establish all the rights and
 liabilities of the parties with respect to that claim); and (2) it must be “final,” either because it
 disposes of all claims (or the last claim) in a lawsuit, or because it has been certified for immediate
 appeal pursuant to Rule 74.01(b).

McConnell v. West Bend Mut. Ins. Co., 606 S.W.3d 181, 187 (Mo. App. W.D. 2020). The parties’ dissolution
judgment fully resolved all claims of the parties in that proceeding.
 5
 Husband argues that Wife’s appeal is barred by the doctrine of res judicata. “[R]es judicata bars the same
parties from re-litigating the same cause of action that has been previously adjudicated by a final judgment on the
merits, or from later raising a claim stemming from the same set of facts that should have been raised in the first suit.”
Johnson Controls, Inc. v. Trimmer, 466 S.W.3d 585, 591 (Mo. App. W.D. 2015). Res judicata does not bar a direct
appeal from a judgment. Husband relies on Foster v. Foster, 39 S.W.3d 523, 528-29 (Mo. App. E.D. 2001), but that
case is inapposite because it involved claim-splitting across successive contempt actions, not a direct appeal from a
judgment.

 6
was lower than the value she would have received had the distribution been performed in

accordance with the dissolution judgment.

 “The general rules of construction for written instruments are used to construe court

judgments.” Dover v. Dover, 930 S.W.2d 491, 495 (Mo. App. W.D. 1996). “The words and

clauses used in a judgment are to be construed according to their natural and legal import.” State

ex rel. Div. of Child Support Enf’t v. Hill, 53 S.W.3d 137, 141 (Mo. App. W.D. 2001). “[W]hen

the language of the judgment is “plain and unambiguous there is no room for construction or

interpretation, and the effect thereof must be declared in the light of the literal meaning of the

language used.” Dover, 930 S.W.2d at 495 (quoting Hampton v. Hampton, 536 S.W.2d 324, 325

(Mo. App. 1976)). “[T]he test for whether an ambiguity exists is whether the judgment is

‘reasonably susceptible to different constructions.’” Hill, 53 S.W.3d at 141 (quoting Disabled

Veterans Tr. v. Porterfield Const., Inc., 996 S.W.2d 548, 552 (Mo. App. W.D. 1999)).

 The relevant language incorporated in the dissolution judgment states, “Husband hereby

releases and quit-claims to Wife all his right, title and interest in and to . . . One-half (1/2) plus an

additional $20,000 from the American Funds Account #3450 as of the date of Judgment entry.”

Wife argues that use of the term “quit-claim”6 signifies the parties’ unambiguous intent that

Husband was to transfer the value of and control over one half of the shares in the account on

December 26, 2018.7 By transferring the shares based upon only one aspect of ownership (value)

 6
 The term “quitclaim” means “[t]o relinquish or release (a claim or right) [or] convey all of one’s interest in
(property), to whatever extent one has an interest.” QUITCLAIM, Black’s Law Dictionary (11th ed. 2019). Although
“quitclaim” frequently refers to the transfer of title to real property, the term can refer to the transfer of personal
property. See, e.g., VinStickers, LLC, v. Stinson Morrison Hecker LLP, 369 S.W.3d 764, 765 (Mo. App. W.D. 2012)
(quitclaiming interest in legal malpractice claim); In re Adelman’s Est., 377 S.W.2d 549, 551 (Mo. App. 1964)
(quitclaiming rights to inherit and to marital, statutory, and dower rights and allowances); Dowd v. Dowd, 155 S.W.2d
282, 283 (Mo. App. 1941) (quitclaiming personal property).
 7
 Wife admits that, had Husband actually effectuated the transfer on December 26, 2018, it would not have
mattered whether he had used the division-of-shares approach or the market-value approach because the shares had a
set value that day and Wife would have received either half of the shares or the cash equivalent of half of the shares
as of that date. But that is because, had the transfer occurred on the day of the judgment, even if technically not as

 7
and delaying the transfer of control over the shares, Husband clearly did not comply with the

requirement of the dissolution judgment. Thus, the harm Wife alleges that she suffered stems from

a combination of the distribution method Husband used and the fact that he delayed the distribution

for nearly four months. During that time, the value of the shares increased, but Wife was denied

her share of the increase in value because she did not have ownership of her half of the shares. As

a result of Husband’s delay, which violated the terms of the judgment, it made a difference whether

“one-half” was calculated using the division-of-shares approach or the market-value approach.

 Husband argues that the language of the dissolution judgment is ambiguous, so we should

consider extrinsic evidence to interpret the judgment and then construe the judgment in his favor

as the non-drafting party. But Husband’s arguments apply only when the language at issue is

ambiguous. See Royalty v. Royalty, 264 S.W.3d 679, 684-85 (Mo. App. W.D. 2008) (examining

extrinsic evidence of the parties’ intent is not warranted where their marital settlement agreement

is unambiguous); Triarch Indus., Inc. v. Crabtree, 158 S.W.3d 772, 776 (Mo. banc 2005)

(unambiguous contracts are interpreted according to their terms and are not construed against the

drafter).

 We hold that the provision directing Husband to release and quitclaim “all his right, title

and interest in and to . . . one-half (1/2) plus an additional $20,000 as of the date of Judgment

entry” is unambiguous. The provision clearly states that Husband is to transfer all right, all title,

and all interest in one half the asset to Wife “as of the date of Judgment entry,” December 26,

2018. Had he done so, Wife would have had not only the “value” of one half of the mutual fund

(plus $20,000) but also all other rights and interests that derive from asset ownership, including

the right to the gain in the mutual fund shares henceforth. By basing the division of shares merely

contemplated in the agreement, Wife would have controlled the asset as of that day and there would have been no
prejudice to her.

 8
upon their value at a later date, Husband failed to effectuate the transfer of shares based upon all

right, title, and interest he had in the shares.

 Our determination that the account provision at issue here is unambiguous is further

supported by the fact that the separation agreement incorporated in the dissolution judgment

contains a mirror-image provision favoring Husband. The separation agreement requires not only

that Husband “release[] and quit-claim[]” one half of the account to Wife but also that Wife

“release[] and quit-claim[]” one half to Husband (with a $20,000 adjustment). This language

reflects that both Husband and Wife were to have ownership and control of one half of the account

as of December 26, 2018. If Husband’s argument were correct, that the judgment must be

interpreted to allow a market-value approach to the distribution of the account, the same approach

must be employed as to both spouses. This would mean that Husband would have received a cash

distribution from the account in April 2019 in an equivalent amount to that distributed to Wife and

undistributed assets (in the amount of the increased value of the account that occurred during the

delay in distribution) would have remained in the account. That is not what happened; instead,

Husband retained all remaining shares in the account after the cash distribution to Wife. Thus,

under Husband’s approach, the phrase “release[] and quit-claim[],” as used in these mirror

provisions, meant different things when applied to Husband and Wife.

 We recognize that, had the transfer occurred on December 26, 2018, as required by the

judgment, the transfer of the value of one half of the account rather than one half of the shares may

not have resulted in prejudice to Wife and, thus, would not have been the basis for a legal

challenge, but the failure to transfer control of one half of the account on that day violated the

judgment. In other words, the unambiguous intent of the judgment was that each spouse receive

sole ownership and control of one half of the assets of the account on December 26, 2018. Thus,

 9
in April 2019, when the transfer was effectuated, the approach used made a difference, and Wife

received less than what she was entitled to because the transfer was based on market value as of

December 2018 and not the number of shares as of that date. Basing Wife’s half of the account

upon the December 26, 2018 value effectively treated Wife’s shares as if they had been liquidated

to cash in December 2018 and removed from the stock market when, in fact, Wife’s shares

remained invested in the market and the resulting gains, earned on her shares, were allocated to

Husband.

 Moreover, the fact that Husband controlled the account meant that Wife was deprived of

the ability to choose how her half of the account was invested or the ability to convert her shares

to cash at a time of her choosing and to use the money for another purpose. And, had the transfer

occurred as required by the dissolution agreement, Wife would have been responsible for losses

or entitled to the benefit of any gains based on her investment decisions.

 Thus, we conclude that, in order to make Wife whole under the unambiguous terms of the

dissolution judgment, the motion court should have required Husband to transfer to Wife that

number of shares necessary to give her one half of the shares, plus $20,000, as of December 26,

2018.

 Conclusion

 Because the motion court misinterpreted the dissolution judgment as to distribution of the

assets of the account, we remand this case for further proceedings consistent with this opinion. On

remand, the trial court has discretion to order any relief necessary to make Wife whole.

 Karen King Mitchell, Judge

W. Douglas Thomson, Presiding Judge, and Alok Ahuja, Judge, concur.

 10